## PARK & TILFORD IMPORT CORPORATION v. HUNTER BALTIMORE RYE, Inc., et al.

District Court, S. D. New York.
Nov. 17, 1933.

Jerome Eisner, of New York City, for plaintiff.

Chadbourne, Stanchfield & Levy, of New York City (J. Arthur Leve and George H. Eichelberger, both of New York City, and Clarence W. Miles, of Baltimore, Md., of counsel), for defendant Hunter Baltimore Rye, Inc.

Charlton Ogburn, of New York City, for defendant J. S. Judge & Co., Inc.

PATTERSON, District Judge.

The suit is in equity to enjoin the defendants from using the name "Hunter Baltimore Rye." The plaintiff has moved for a preliminary injunction.

The facts are not in serious dispute. Prior to national prohibition the firm of William Lanahan & Son of Baltimore manufactured and sold whisky under the trade-mark "Hunter Baltimore Rye." The product was famous and the trade-mark valuable. The manufacture and sale ceased with the coming of prohibition. The trade-mark and good will of the business were owned by the estate of Catherine C. Lanahan. In the summer of 1933 it became evident that the constitutional amendment prohibiting the manufacture and sale of intoxicating liquor was likely to be repealed, and interest in this trade-mark was revived. The plaintiff took up with Safe Deposit & Trust Company of Baltimore, administrator of the Lanahan estate, the matter of purchasing the trade-mark. A purchase was arranged, subject to approval of the orphans' court of Baltimore county, and the purchase price of $15,000 paid to the administrator. Thereafter there were proceedings in the orphans' court that have created confusion and doubt as to the rights of the parties. The administrator filed petition for leave to sell the trade-mark, and by an order of August 22, 1933, it was authorized to sell the trade-mark and good will at private sale. It immediately filed an account showing a sale to the plaintiff for $15,000. At this point certain next of kin and legatees of the Lanahan estate intervened, and an order, also dated August 22, 1933, was made approving the sale unless cause to the contrary should be shown by September

5, 1933. The plaintiff then came before the court and procured an order on August 30, 1933, unconditionally approving the sale and revoking the prior order of August 22d, which gave time to the next of kin to contest the matter of approval. This order of August 30th was in turn revoked and vacated by the orphans' court on August 31st, and matters were thus restored to the condition in which they had stood on August 22d. Thereafter hearings were held on petitions to revoke the letters of administration and to disapprove the sale. These culminated in an order of September 19, 1933, revoking the letters, and in an order of September 28, 1933, disapproving the sale and setting it aside. From the latter order the plaintiff appealed to the Maryland Court of Appeals. The appeal is still pending and will probably not be decided for a month or more.

The defendant Hunter Baltimore Rye, Inc., is a corporation recently organized to engage in the whisky business as soon as that business shall be lawful. It has made a contract with the new administrators of the Lanahan estate to buy the trade-mark. It has also made a contract to sell part of the capital stock to the other defendant, J. S. Judge & Co., Inc., which is now engaged in selling stock to the public. The plaintiff asks for an injunction to restrain the Hunter Baltimore Rye Company from using the name Hunter Baltimore Rye in any manner and to restrain the Judge Company from offering any of the stock for sale.

I am of opinion that there should be no preliminary injunction at the present time. This is not the ordinary case of trade-mark infringement, where the plaintiff's right to the mark is beyond dispute and the only point is that of infringement. Here the plaintiff's title is in serious doubt. The decision of the Maryland courts for the time being is that there was no valid sale to the plaintiff.

The plaintiff relies on the rule that an injunction will issue to protect property pending litigation over it. There can be no question of the court's power to preserve the status quo until the title to the property in dispute is determined by proceedings in other courts. But in such cases, as in many others, the exercise of the power depends on the balance of convenience. In a doubtful case the damage to the plaintiff on refusal of immediate injunction is to be measured against the injury to the defendants if they be restrained forthwith. Allison v. Corson (C. C. A.) 88 F. 581; Colgate v. James T. White & Co. (C. C.) 169 F. 887; Wilmington City R. Co. v. Taylor (D. C.) 198 F. 159, 197. I cannot see that the plaintiff will be seriously hurt by the denial of an injunction now. It is not using the trade-mark presently and is not even making immediate plans to use it. If it ultimately prevails in the Maryland litigation, its title to the mark will be clear, and nothing that the defendants do in the interim to raise capital and prepare to manufacture will seriously harm the plaintiff. On the other hand, the tying of the defendants' hands at the present time might operate to their great prejudice. If the Maryland suit goes against the plaintiff, the defendants will have been prevented from getting the money needed for manufacture and sale in the future and the consequences to them may be most onerous.

The application will be denied, without prejudice to a renewal in case the plaintiff is successful in its appeal before the Maryland Court of Appeals.