### HUBER BAKING CO. v. STROEHMANN BROS. CO. et al.

United States District Court
S. D. New York.
Feb. 27, 1953.

Appell, Austin & Gay, New York City, for plaintiffs.

Nims, Martin, Halliday, Whitman & Williamson, New York City, for defendant Stroehmann Bros. Co.

MURPHY, District Judge.

This is a motion for a preliminary injunction arising out of alleged unfair competition and trademark infringement by defendants in the field of bread and other bakery products within the area of the city of Philadelphia. Plaintiff is a Delaware corporation with its plant in Wilmington and its market in that State and surrounding areas in adjacent States, including the city of Philadelphia. Defendant Stroehmann is a Pennsylvania corporation with bakeries in various locations in Pennsylvania outside Philadelphia and one in the State of New York. It is charged with infringement of plaintiff's alleged common-law trademarks and with unfair competition because of the sale of its bread in certain marked wrappers in the city of Philadelphia. Defendant Quality Bakers of America Cooperative, Inc., is a New York cooperative corporation with its principal office in the city of New York. The complaint charges it with contributing to defendant Stroehmann's infringement by extending Stroehmann's sales territory under a previous membership license agreement to include the city of Philadelphia and by supplying Stroehmann with certain bread wrappers, labels and advertising material for use in Philadelphia. Jurisdiction is based on diversity of citizenship and the requisite jurisdictional amount in controversy.

Plaintiff alleges that it had registered a label bearing the words "Huber's Sun Beam Bread" in the United States Patent Office in 1913, and had continuously employed that label, or "Huber's Sunbeam Bread", on one or more types of bread from 1913 until 1941. In November, 1941, plaintiff signed its application for membership in defendant Quality Bakers of America Cooperative, and its membership became effective some time in 1942. Defendant cooperative consists of members operating independent bakeries, now amounting to 114—including plaintiff— throughout the United States and Hawaii. In the Fall of 1942, pursuant to negotiations between plaintiff and defendant Cooperative which had begun prior to plaintiff's membership application, a so- called Sunbeam Campaign was inaugurated. Defendant Cooperative furnished plaintiff wrappers and labels for its bakery products in four colors with the distinctive portrait of a little girl eating a slice of buttered bread with the subscription "Miss Sunbeam" on the wrapper (and simply "Sunbeam" on one label on the bread wrappers) together with the words "Huber's Sunbeam Enriched Bread" (and simply the words "Huber's Milk Improved Sunbeam Bread" without the portrait on another label).

On April 27, 1943, defendant Cooperative registered the distinctive portrait of the little girl with the United States Patent Office as a collective trademark. In 1947, the portrait and the word "Sunbeam" were registered in Pennsylvania. Other registrations in various states were effected in 1946.

Late in 1944 and early in 1945, two written instruments were executed in connection with this promotional campaign. One, an assignment signed only by plaintiff's president on December 26, 1944, purports to transfer to defendant Cooperative plaintiff's "entire right, title and interest in and to the label and the registration thereof, No. 17387, and each and every part thereof, together with the good will of the business with which such label is used, reserving unto itself, however, the full and unrestricted right to the use of the same within the limits of the trading area hereinafter specified." A description of this "trading area" follows with an attached map both of which include the city of Philadelphia. The second instrument is a contract signed by plaintiff on December 26, 1944 and by defendant Cooperative on January 2, 1945. In this agreement it is recited that defendant Cooperative "has developed and owns a certain new and distinctive work of art, trademark, label and package, including the attached wrapper, all as represented and known as the Sunbeam campaign. Subject to its due performance of the conditions of the agreement, plaintiff is granted "the right to the use of said work of art, trademark, label and package, 'Sunbeam' campaign, and all and each of the same within the limits of the trading area hereinafter specified."

The "trading area" thereafter described and in an attached map includes the city of Philadelphia.

On December 21, 1951, defendant Co-operative extended defendant Stroehmann's license to use the Sunbeam campaign so as to include the entire city of Philadelphia, subject to the limitation that Stroehmann "is not to sell, or offer to sell, its products under the 'Sunbeam' trademark to any merchant within the extended area who has been a buyer of Huber's 'Sunbeam' products as of December 12th, 1951." Defendant Stroehmann had been a member of Cooperative, or its predecessors, since 1924; had used the Sunbeam campaign outside Philadelphia since 1950; and had long before marketed its bakery products in Philadelphia without the Sunbeam marks. Shortly thereafter defendant Stroehmann commenced its advertising and marketing under the Sunbeam campaign in the city of Philadelphia, and accordingly this action was commenced by plaintiff.

Plaintiff insists that it has built up a valuable good will in "Sunbeam" and "Miss Sunbeam" as its trademarks in Philadelphia which is entitled to protection according to the principles of the common law of unfair competition. In addition, it claims that under the assignment of 1944 and contract in 1945 involving defendant Cooperative, it retained exclusive rights to Sunbeam in Philadelphia. Defendants, for their part, contend that no such exclusive rights are reserved to plaintiff in either instrument; that plaintiff has no common law rights but only ones of a licensee in the distinctive portrait of the little girl and the Sunbeam inscription accompanying it; and that plaintiff induced defendant Cooperative to adopt "Sunbeam" as its nationwide brand name and collective mark for its promotional campaign.

Were this a simple case of infringement by defendant Stroehmann's use of a bread wrapper confusingly similar to that of plaintiff in Philadelphia and plaintiff's right to exclusive use in that area were beyond dispute, this court would not hesitate to grant a preliminary injunction. But many issues, apart from confusion, cannot be properly deemed beyond dispute

on the affidavits and pleadings at this stage of the proceeding, so as to entitle the plaintiff to this extraordinary remedy. These include plaintiff's common-law rights in Philadelphia to the distinctive portrait of the little girl; and the exclusiveness of its reservation of the word "Sunbeam" under the assignment of 1944 and of the portrait and word under the contract of 1945, for use in the city of Philadelphia. Even should the court feel, from examination of the papers now before it on this motion, that plaintiff will ultimately prevail after trial of these issues, the fact that his right at this stage is clearly not beyond dispute is sufficient to deny the injunction pendente lite. Quigley Pub. Co., Inc., v. Showmen's Round Table, Inc., D.C.S.D. N.Y., 7 F.Supp. 410; Park & Tilford Import Corp. v. Hunter Baltimore Rye, Inc., D.C.S.D.N.Y., 5 F.Supp. 888; American Mercury, Inc., v. Kiely, 2 Cir., 19 F.2d 295. Although plaintiff will undoubtedly suffer damage if defendants' use of Sunbeam is ultimately determined to be actionable, there is no specific indication in this case that the loss resulting to plaintiff before the matter can be finally disposed of will be irreparable. See Ward Baking Co. v. Oak Park Baking Co., Inc., D.C.D.Del., 278 F. 627.

Motion for preliminary injunction denied.