RICHARD J. SPITZ, Inc., Plaintiff,

v.

Robert W. DILL, Collector of Customs, Defendant.

United States District Court
S. D. New York.

March 22, 1956.

948

Graubard & Moskovitz, New York City, for plaintiff.

Paul W. Williams, U. S. Atty., New York City, by Harold J. Raby, Asst. U. S. Atty., New York City, for defendant.

WEINFELD, District Judge.

The plaintiff, an importer of spices, brings this suit for a judgment declaring that the action of the defendant, the Collector of Customs, in refusing to permit the entry of 2,010 bales of cassia,[1] is arbitrary and not authorized by law. The complaint also seeks a preliminary and permanent injunction restraining the Collector from prohibiting the entry of the cassia. The matter is before the Court on plaintiff's motion for the preliminary injunction and defendant's cross-motion to dismiss the complaint.

The cassia, which arrived at the Port of New York between January, 1953 and May, 1953, had been imported by plaintiff pursuant to specific licenses previously issued to him by the Secretary of the Treasury through the Foreign Assets Control Division.[2] Each license authorized the importation of the cassia but contained a proviso that no Collector of Customs was authorized to release the merchandise until after he had determined from a physical examination that it was not of Chinese origin.

The plaintiff attacks the Collector's action with respect to separate portions of the total shipment. With respect to 1,710 bales he contends entry has been denied although no examination and determination has been made by the Collector or any of his official aides as to whether the cassia was or was not of Chinese origin; alternatively, plaintiff contends that if the Collector did make a determination it was arbitrary and capricious, because in applying the so-called "panel" test (by taste, smell and appearance) the Collector received the

---

1. Cassia is similar to and generally used to manufacture household cinnamon.

2. Under Foreign Assets Control regulations the importation of Chinese cassia was prohibited but importation of Batavian and Saigon cassia was permitted under specific licenses issued to importers. A basic purpose of the regulations was to deprive Communist China of needed foreign exchange. 31 Code Fed.Regs. §§ 500.204, 500.801 et seq.

"advice" and "opinion" of experts in the spice trade who were plaintiff's competitors on the basis of which he refused to release the cassia from custody in disregard of the fact that it was of Saigon and not of Chinese origin. As to the remaining 300 bales plaintiff contends that although an examiner and a Customs appraiser [3] had determined that the cassia was of non-Chinese origin, the defendant arbitrarily overruled their judgment in reliance upon a subsequent report of panel experts again allegedly competitors of the plaintiff.

The defendant directly challenges these contentions and asserts that he made a determination as required by law which reflected his independent judgment. Whatever doubt there may have been as to a finding or determination by the Collector has been allayed by the definitive and formal finding submitted by him in opposition to this motion. In substance, based upon the panel examination method and opinion of experts, the Collector has determined that the cassia in question is not clearly of non-Chinese origin and therefore inadmissible for entry into the United States. The plaintiff through expert witnesses attacks the reliability of the panel test. Its experts urge a volatile oil content test [4] as the only scientific and dependable one.[5] In turn the Collector's experts challenge the conclusiveness of the oil content theory. This is the hard core of the controversy. The Collector incidentally asserts that examinations of cassia by the panel experts were so conducted as to preserve the anonymity of the importer of each shipment and thus assure purely objective findings.

Whether the volatile oil test or the panel test or any other test is to be used to determine the origin of cassia must rest within the discretion of the officer who has the responsibility for making the decision—and it may not be attacked, certainly not on a motion for preliminary relief—unless it is shown that there was no basis at all for relying upon the method employed. Issues of fact posing conflicting theories in a battle of experts should not be decided on affidavits. To grant, in the face of the sharply controverted issues of fact, the broad injunctive preliminary relief which would yield to the plaintiff all that it could secure only after a trial upon the merits would not be a wise exercise of discretion.[6]

A further reason for denial of relief is that the situation here sought to be remedied has existed for a period of three years during which no legal action was taken by plaintiff. This circumstance dispels any suggestion of the need for immediate relief. There has been no such clear showing that plaintiff is likely to succeed or of irreparable injury as to warrant the extraordinary relief of a preliminary injunction in advance of trial. Accordingly the plaintiff's motion is denied.

We next consider the cross-motion made by the defendant pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to dismiss the complaint on the grounds of (1) absence

---

3. Appraisers customarily act for the Collector in making a physical examination of the merchandise.

4. Under this test if the cassia has a volatile oil content of at least 2.5% it is deemed of non-Chinese origin. Those who advocate this method contend that the volatile oil content of cassia grown in China is usually in the range of between 0.75% to 1.5% (the average being 1.07%) whereas Saigon and other cassia runs fom 2.5% to 4%. The Government disputes this alleged scientific test contending that cassia produced in certain Chinese provinces has a greater volatile oil content than 2.5%. Other objections are made to the reliability of the test.

5. Plaintiff also relies upon a microscopic and macroscopic analysis made by another expert.

6. Foundry Services, Inc., v. Beneflux Corp., 2 Cir., 206 F.2d 214; Behre v. Anchor Ins. Co., 2 Cir., 297 F. 986; Hall Signal Co. v. General Ry. Signal Co., 2 Cir., 153 F. 907; Anderson-Friberg, Inc., v. Justin R. Clary & Son, D.C.S.D.N.Y., 98 F.Supp. 75, 82.

of an indispensable party, to wit, the Secretary of the Treasury; (2) lack of jurisdiction of the subject matter of the suit; and (3) failure to state a claim upon which relief can be granted.

As to lack of an indispensable party, the plaintiff is not applying to the Secretary of the Treasury for a license, as defendant suggests in his opposing papers. The licenses under which the cassia had been imported were issued to plaintiff by the Secretary of the Treasury more than three years ago. They contain a specific authorization to the defendant here, the Collector of Customs, to permit the entry of the merchandise provided he determines that it is not of Chinese origin. The plaintiff contends that the Collector's denial of entry disregards the very authority vested in him by his superior and that it is his alleged arbitrary conduct with respect to that authority, and not any action or non-action of the Secretary of the Treasury, which is sought to be reviewed. Thus any decree that may be issued will effectively grant the requested relief by expending itself upon the Collector who is before the Court, the very subordinate authorized, under the licenses as issued, to permit the entry of the merchandise.[7] The defendant, if a decree is awarded to the plaintiff, will not be required to violate any order of his superior; on the contrary he will be required properly to exercise the authority vested in him by his superior. That the Secretary of the Treasury is not an indispensable party is sharply pointed up by the affidavit submitted in opposition to the plaintiff's motion by an assistant general counsel to the Treasury Department who notes that because huge shipments of cassia into this country appeared to be in excess of known importable quantities, the Treasury Department ceased to license new importations to make certain that Chinese cassia did not filter through. But the Treasury Department "continued to rely on the panel examination * * * with respect to cassia shipped under licenses previously issued to importers." It is precisely such licenses upon which plaintiff predicates his present claim of arbitrary action by the Collector and hence there is no requirement that the Secretary of the Treasury be made a party to this suit.

 The additional grounds upon which the motion to dismiss the complaint is based are equally untenable.[8] Accordingly, the defendant's cross motion is denied in all respects.

Settle order on notice in accordance with the foregoing.

---

7. Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; Croton Watch Co. v. Laughlin, 2 Cir., 208 F.2d 93.

8. Cf. Croton Watch Co. v. Laughlin, 2 Cir., 208 F.2d 93; Truth Seeker Co. v.

Durning, 2 Cir., 147 F.2d 54; Dioguardi v. Durning, 2 Cir., 139 F.2d 774; Nakasheff v. Continental Ins. Co., D.C.S.D. N.Y., 89 F.Supp. 87, 90. See also 28 U. S.C. § 2006.