**G. P. PUTNAM'S SONS, Terry Southern and Mason Hoffenberg, Plaintiffs,**

v.

**LANCER BOOKS, INC., J. W. Clement Co., and Publishers Distributing Corporation, Defendants.**

United States District Court
S. D. New York.

Feb. 5, 1965.

Parker, Duryee, Benjamin, Zunino & Malone, New York City, Angelo A. Maurino, James G. Bernheim, New York City, of counsel, Rembar & Zolotar, New York City, Charles Rembar, New York City, of counsel, for plaintiffs.

Bernard L. Goldstein, New York City, for defendant Lancer Books, Inc.

Falk, Twelvetrees, Johnson & Seimer, Buffalo, N. Y., for defendant J. W. Clement Co., Amster & Rothstein, Morton Amster, Jesse Rothstein, New York City, of counsel.

Benjamin E. Winston, New York City, for defendant Publishers Distributing Corp.

McLEAN, District Judge.

This is an action for alleged copyright infringement and unfair competition. Plaintiffs have moved for a preliminary injunction. The court held a hearing at which testimony was taken and many of the essential facts were stipulated. The court finds the facts to be as follows.[1]

In or prior to 1958, plaintiffs Terry Southern and Mason Hoffenberg, who are American citizens, wrote a novel which was published in France in 1958, in the English language, under the title of "Candy." Another edition, also in English, was published in France under the title of "Lollipop." Both editions were published by Olympia Press and both showed the author as Maxwell Kenton, a pseudonym which Southern and Hoffenberg employed. The French editions were copyrighted in France.

No one has ever applied for ad interim registration of United States copyright on this book under the provisions of 17 U.S.C. § 22. No copy of the French edition was deposited with the Copyright Office within six months after its publication in France, as required by Section 22. There was no publication of the book in the United States within five years after its publication in France.

According to a letter dated January 19, 1965, from the Bureau of Customs to plaintiff G. P. Putnam's Sons ("Putnam")[2], an attempt was made sometime prior to 1964 to import copies of the book into the United States, but the books were seized by the Customs authorities under Section 305 of the Tariff Act (19 U.S.C. § 1305) presumably on moral grounds. In September 1964, the Bureau of Customs decided that the book was admissible under the Tariff Act. It would seem from the facts hereinafter related that some copies of the book must have been in the United States, whether legally or not, prior to September 1964.

By agreement dated December 15, 1963, apparently signed by Putnam on January 23, 1964, Southern and Hoffenberg granted to Putnam the exclusive right to publish "CANDY (also called LOLLIPOP)" in the United States, its territories and possessions and the Philippine Islands, and the non-exclusive right to publish it in "all other territories except the British Commonwealth." At some time, just when does not appear, Southern and Hoffenberg "revised" the book. These "revisions" consisted of changes in the wording of certain passages, changes which in no way altered the sense. The first of these changes is typical of all and is quoted by way of illustration. The sentence reading:

"I've read *many* books," said Professor Mephesto, with an odd, weary finality, placing his hands flat on the podium. * * *

was altered to read:

"I've read *many* books," said Professor Mephesto, with an odd finality, wearily flattening his hands on the podium. * * *

On June 8, 1964, Southern and Hoffenberg, by their agent, deposited two copies of the revised book with the United States Copyright Office and applied for a United States copyright on it. Question 5 of the application form reads:

"If any substantial part of this work has been previously published, give a brief general statement of the nature of the new matter in this version."

To this plaintiffs answered, "Editorial revisions throughout."

1. After the hearing, without previous notice of their intention to do so, plaintiffs served and filed an amended complaint. This is noteworthy primarily for its change in the legal theory advanced by plaintiffs. In so far as any new factual allegations are made in it which differ from the facts developed at the hearing, it will be disregarded for the purposes of this motion.

2. This letter is attached to plaintiffs' supplemental memorandum. It could not be offered at the hearing, because the hearing was held on January 13, 1965, before the date of the letter. There is no reason to doubt the letter's authenticity.

Question 6 reads:

"If this is the U.S. edition of a book in English, and all or a substantial part of the English text of an earlier foreign edition was manufactured and first published abroad, complete the following spaces."

Below this appears the question:

"Was claim to ad interim copyright registered in the foreign edition?"

after which appear two boxes, one labeled Yes and the other No.

Neither box was checked by the applicants. Instead, there was typed in under Question 6 the following:

"The present work, as revised throughout, has never been published abroad."

On June 8, 1964, the Copyright Office placed its stamp upon the application, thereby converting it into a Certificate of Copyright Registration No. A 698353.

On May 12, 1964, plaintiff Putnam published the revised book in the United States under the title of "Candy." This edition was in hard covers. Its retail price was $5.00. The authors are shown as Southern and Hoffenberg. The name Maxwell Kenton does not appear. The back of the title page of the book bears the legend "Copyright © 1958, 1959, 1962, 1964 by Terry Southern and Mason Hoffenberg." It is conceded that 1958, 1959 and 1962 refer to French copyrights. The only United States copyright which plaintiffs claim is that of 1964.[3]

The jacket of the book immediately above the title contains the following announcement:

"Since 1958 the literary underground on both sides of the Atlantic has hotly discussed a brilliant, hilarious novel which was published pseudonymously in Paris by the famed Olympia Press. Now for the first time the complete text of this comic classic is presented to the American public."

The book attained a spectacular success. Between 120,000 and 130,000 copies were sold from May 12, 1964 through early January 1965. The book was listed among the three best sellers in the country.

On January 4, 1965, defendant Lancer Books, Inc. ("Lancer") published a paperback edition of "Candy." Its author was shown as Maxwell Kenton. The book was printed by defendant J. W. Clement Co. ("Clement") and distributed by defendant Publishers Distributing Corporation ("PDC").

In excess of 800,000 copies were printed and were distributed to wholesalers and retailers immediately without awaiting receipt of any orders from them. This so-called "forced distribution" is unusual, although Lancer has employed it once or twice before with other books.

The retail price of the Lancer paperback is 75¢. The cover and the title page identify Lancer as the publisher, with its name and customary symbol, which are printed in the same place and style as they appear on other books published by Lancer. The cover in no way resembles the jacket or cover of the Putnam book. The cover of the Lancer book is decorated only with a reproduction of crimson parted lips, whereas the jacket of the Putnam book depicts a shaggy-haired female head.

The cover of the Lancer book, immediately below the title, states:

"NOT ONE WORD CHANGED! This is the ORIGINAL, UNCUT and UNEXPURGATED edition as first published and banned in Paris."

This statement, except perhaps as to the "banning," is true. The Lancer book was copied word for word from the French edition of "Candy." It does not contain the "revisions" of the Putnam edition.

---

3. It may be noted here that the French copyright is immaterial for our purposes. The Universal Copyright Convention does not apply to works published abroad of authors who are United States citizens (17 U.S.C. § 9).

On January 11, 1965, Putnam published a paperback edition of its version of "Candy" to retail at 95¢. Its cover depicts the same shaggy-haired female as appears on the hard cover edition. It also prominently displays the legend:

"THIS AND ONLY THIS IS THE ENTIRE $5.00 PUTNAM EDITION." [4]

Rumors that Putnam was about to bring out a paperback edition had reached Lancer at some unspecified time prior to the publication of Lancer's book.

Plaintiffs seek to enjoin defendants, pendente lite, from publishing and distributing the Lancer book, on two grounds, (1) that it infringes plaintiffs' copyright, and (2) that it competes unfairly with plaintiffs' book. The claim of infringement will first be considered.

17 U.S.C. § 13 provides:

"No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with."

The question is thus whether plaintiffs have a registered United States copyright upon the book which Putnam published so as to entitle them to sue for infringement.

■ The law is clear that when revisions or additions are made to a work which lies within the public domain, the copyright protection secured by registration of that work extends at most only to the revisions and additions, *i. e.*, to the work which was original with the author who seeks the copyright. The classic example is the revised edition of Shakespeare published with a new preface or commentary. The copyright registration protects only the preface or commentary, not Shakespeare's text. Kipling v. G. P. Putnam's Sons, 120 F. 631, 65 L.R.A. 873 (2d Cir. 1903); American Code Co.

v. Bensinger, 282 F. 829 (2d Cir. 1922); Axelbank v. Rony, 277 F.2d 314 (9th Cir. 1960).

■ If this principle applies here, then plaintiffs have copyright protection, at best, only with respect to the revisions which the authors made to the French edition of "Candy." There may be a question as to whether plaintiffs have even that much protection in this case. In order to copyright revisions or changes made in a work in the public domain, the revisions must not be "trivial." Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99 (2d Cir. 1951); Ziegelheim v. Flohr, 119 F.Supp. 324 (E.D.N.Y.1954).

It is at least arguable that the revisions made in "Candy" were so slight as not to meet even this lenient standard. It is unnecessary to decide that question upon this motion, since it is conceded that defendants did not copy any of the revisions and therefore it makes no difference for present purposes whether plaintiffs have a copyright on the revisions or not.

Upon the argument and at the hearing, plaintiffs took the position that the principle above noted does not apply because the French edition of "Candy" which defendants copied was not in the public domain because it had never been published without notice of copyright in the United States. In other words, their contention is that a book in the English language by American authors which was published only in a foreign country is not in the public domain, within the meaning of the United States copyright laws, and at any time that the authors apply for registration of a United States copyright on that book as revised, they secure United States copyright protection for the entire book, not merely for the revisions.

Plaintiffs cite no authority for this proposition. Moreover, such authority as can be found appears to be to the contrary. In American Code Co. v. Ben-

---

4. As some indication of the type of literature with which we are concerned here, it may be noted that the Putnam paperback also prominently displays on its cover a quotation from Life Magazine reading: "Sex in America, after this event, will never be the same."

singer, supra, for example, the first edition of the book had been published in England. There is nothing to indicate that it had ever been published in the United States. Plaintiff added some revisions and secured copyright registration of the revised work in the United States. The court reaffirmed the principle that the copyright protection extended only to the revisions. It would seem that the only reason that plaintiffs secured an injunction in that case was that defendant had copied the revisions as well as the first text, something which the defendants in this case have not done.

In their amended complaint and supplemental brief, plaintiffs have changed their legal theory. They now assert that if they had applied to the Copyright Office in 1964 for a registration of the copyright on the French version of "Candy," the application would have been denied on the ground that no application for ad interim registration had been made. They point to a Copyright Office regulation, 37 C.F.R. 202.4(b) which provides:

> "*Ad interim registrations* (1) An American edition of an English-language book or periodical identical in substance to that first published abroad will not be registered unless an ad interim registration is first made."

This regulation, plaintiffs contend, is contrary to the copyright law and contrary to the Constitution. They then assert that since it would have been futile for them to attempt to register a copyright on the French edition because the Copyright Office would have erroneously denied it, their position in this action should be the same as it would be if they had obtained such a registration.

It is probable that plaintiffs are correct in their surmise that if they had applied for registration of a copyright on the French edition more than five years after its first publication in France,

the Copyright Office would have denied the application because of the absence of any ad interim registration in the meantime. Obviously it was because of this Copyright Office regulation that the form of application for registration contains questions Nos. 5 and 6 quoted above. If, in answer to these questions, Southern and Hoffenberg had disclosed that "Candy" had been published in France, that the text of the French edition was substantially similar to that of the revised edition being offered for registration, and that ad interim copyright on the French edition had not been obtained, the Copyright Office doubtless would have declined to register the copyright.[5] It does not follow, however, that plaintiffs are now entitled to sue for infringement.

In the first place, it is by no means clear that the regulation of the Copyright Office is contrary to the copyright law. No court has ever so held, as far as this court has been advised or has been able to discover. Section 22 of the Copyright Act provides:

> "In the case of a book or periodical first published abroad in the English language, the deposit in the Copyright Office, not later than six months after its publication abroad, of one complete copy of the foreign edition, with a request for the reservation of the copyright and a statement of the name and nationality of the author and of the copyright proprietor and of the date of publication of the said book or periodical, shall secure to the author or proprietor an ad interim copyright therein, which shall have all the force and effect given to copyright by this title, and shall endure until the expiration of five years after the date of first publication abroad."

The section is silent as to whether one who has not complied with it may,

---

5. The answer to question No. 6 of the application that "the present work as revised throughout, has never been published abroad," while literally true, may be thought to be something less than candid. It is hard to reconcile this statement with the announcement on the jacket of the Putnam edition that the book contains "the complete text" of the novel published in Paris.

after the expiration of the five-year period, obtain registration of copyright on the foreign edition. It could be said that since compliance with Section 22 results in a "reservation" of copyright, no copyright is obtainable after five years if it was not first "reserved" in accordance with the section.

This construction is reinforced by Section 23 which provides:

"Whenever within the period of such ad interim protection an authorized edition of such books or periodicals shall be published within the United States, in accordance with the manufacturing provisions specified in section 16 of this title, and whenever the provisions of this title as to deposit of copies, registration, filing of affidavits, and the printing of the copyright notice shall have been duly complied with, the copyright shall be extended to endure in such book or periodical for the term provided in this title."

The specific reference to publication of the book in the United States "within the period of such ad interim protection," i. e., within the five years, gives rise to a permissible inference that if the book is not published in the United States until after the five-year period has expired, no permanent copyright on it can be secured.

Both sections are also silent as to whether it makes any difference that the importation of the foreign edition was impossible during part or all of the five-year period because of other statutes relating to standards of morality and decency.

The court sees no need to decide these novel questions upon this motion. Whether the Copyright Office would have refused registration of the French edition under these circumstances, and whether, if it had, its action would have been illegal or unconstitutional, are questions which are not presented by the present record. Plaintiffs never applied for registration of copyright on the French edition and hence they never obtained one. Since they do not have one, it would seem that under Section 13 they may not sue for infringement of something which they do not have. It is farfetched to argue that they may maintain an action for infringement as though they had complied with the registration requirements when, in fact, they have never attempted to comply with them.

■■■ Finally, and most important of all, we must not lose sight of the fact that upon this motion the court is not called upon to decide the entire litigation. The rule is well established that the drastic remedy of a preliminary injunction should not be granted, particularly where to grant it would afford plaintiffs substantially all the relief to which they would be entitled if they prevailed at the trial, where the probability of their success after a trial is not clear. Willheim v. Murchison, 203 F.Supp. 478 (S.D.N.Y.1962), aff'd sub nom. Willheim v. Investors Diversified Services, Inc., 303 F.2d 276 (2d Cir. 1962); Huber Baking Co. v. Stroehmann Bros. Co., 114 F.Supp. 411 (S.D.N.Y.1953), aff'd, 208 F.2d 464 (2d Cir. 1953); Nadya, Inc. v. Majestic Metal Specialties, Inc., 127 F. Supp. 467 (S.D.N.Y.1954); Richard J. Spitz, Inc. v. Dill, 140 F.Supp. 947 (S.D. N.Y.1956).

This principle has been applied in copyright infringement cases. American Visuals Corp. v. Holland, 219 F.2d 223 (2d Cir. 1955).

■■■ The court is satisfied that it is far from clear in this case that plaintiffs are entitled to enjoin the publication of defendants' book on a theory of copyright infringement. Consequently, it would be inappropriate to grant a preliminary injunction as far as that aspect of the case is concerned. .

■■■ I turn now to the claim of unfair competition. Certain matters may be disposed of at the outset.

There is no evidence of any attempt by defendants to pass off the Lancer book as Putnam's. Lancer's name and symbol appear on its edition of "Candy" in the manner which is customary with it on

other books which it has published. The evidence further shows that Lancer's customary manner of identifying itself as publisher is similar to that employed by other publishers of paperback volumes. The cover of the Lancer "Candy" bears no resemblance to the jacket of the Putnam hard cover edition or the cover of the Putnam paperback. The statement on the Lancer book that "not one word" of the Paris edition has been changed is true, and indeed is more accurate than the representation on the jacket of the Putnam hard cover book that the book contains the "complete text" of the novel published in Paris. The reading public may wonder why one "Candy" is written by Maxwell Kenton and the other by Southern and Hoffenberg. This perplexity, if it exists, results from the fact that Southern and Hoffenberg elected to use a pseudonym for their French edition. Copyright aside, it is not unfair competition for Lancer to reproduce on its copy of the French work the name of the man whom the French edition listed as its author.

On the other hand, the court believes that Lancer's reason for publishing its "Candy" when it did, and for distributing it to its customers without even waiting for their orders to be received, was its desire to capitalize upon the unprecedented success which the Putnam hard cover edition had enjoyed. The court so finds, despite the testimony that Lancer had considered bringing out an edition of "Candy" before the Putnam book appeared.

The question remains as to whether the facts make a sufficiently strong showing of unfair competition to justify granting a preliminary injunction on that ground. The recent decisions of the Supreme Court in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), indicate that the answer to this question must be in the negative. Those cases establish the principle that state law may not forbid,

on a theory of unfair competition, the copying of an article which is not protected by federal patent or copyright. Mere confusion in the minds of purchasers as to which article is which and as to who is the maker cannot afford a basis for prohibition by a state of the acts of copying and selling. The fact that a defendant copies his competitor's successful product out of a desire to profit thereby would seem to be wholly immaterial. It is unnecessary to consider whether these cases go as far as to deny the states power to prohibit intentional passing off of a product as that of another for, as previously noted, no such passing off has been shown here. In the court's opinion, the present case is weaker from plaintiffs' point of view on the issue of unfair competition than the cases of the plaintiffs in either Sears or Compco. In any event, at the very least, plaintiffs' right to relief on that theory is by no means clear.

Pursuant to Rule 52(a) this opinion constitutes the court's findings of fact and conclusions of law.

The motion is denied. So ordered.