CHIPS 'N TWIGS, Inc., A Corporation,
Plaintiff,

v.

BLUE JEANS CORP., A Corporation,
and
Strawbridge & Clothier, A Corporation,
Defendants.

Civ. A. 21667.

United States District Court
E. D. Pennsylvania.

Dec. 5, 1956.

Sigmund H. Steinberg, Blanc, Steinberg, Balder & Steinbrook, Philadelphia, Pa., for plaintiff.

Harry A. Rutenberg, Philadelphia, Pa., for defendants, Blue Jeans Corp.

Frank L. Luce, Philadelphia, Pa., for Strawbridge & Clothier.

CLARY, District Judge.

Plaintiff herein has charged defendants with trade-mark infringements and unfair competition. The matter is presently before the Court on the prayer of the plaintiff for a preliminary injunction restraining the one defendant, Blue Jeans Corp., from distributing boys' clothing under the trade brand "Blue Chips", and the remaining defendant, Strawbridge & Clothier, from selling such goods to the general public.

Plaintiff herein has since 1916 been a manufacturer of juvenile clothing for boys. Beginning in 1916 it operated as a partnership, B. Schwartz & Company. During the year 1946 a corporation, Wm. Schwartz & Co., Inc., was organized with which corporation the aforesaid partnership merged in the year 1951. By appropriate corporate action and by statutory change of name procedures, Wm. Schwartz & Co., Inc., on May 7, 1956, became Chips 'N Twigs, Inc., the present plaintiff. The primary business of the plaintiff has been the manufacture of boys' juvenile clothing, principally sizes 4 to 12 years, which it retailed under the trade-mark "Chips", registered 414,492 on June 12, 1945 and republished under the Lanham Act on July 1, 1952. For older sizes 13 to 20, goods manufactured by the plaintiff were placed on the market under the trade-mark "Chips Off The Old Block", registered 412,572 on March 13, 1945 and republished July 22, 1952. There is also another trade-mark, the property of the plaintiff 637,481, "Mr. Chips", registered November 20, 1956, which has been in use for at least one year by the plaintiff. The volume of business done by the plaintiff for the past several years has been from four to six million dollars per year. Of this amount 65% of the goods manufactured were in the 4 to 12 age range; about 10% were in the age bracket 13 to 20; and the remaining 25% were in the 2 to 6 year bracket, the latter distributed under the trade name of "Twigs" which is not involved in the present proceeding. It would appear, therefore, that the plaintiff has, in the principal age bracket, 4 to 12, been manufacturing and selling goods under the trade name "Chips" for at least the past several years in a volume exceeding three million dollars annually.

Within the past year the defendant Blue Jeans Corp. has entered the field of the manufacture of boys' clothing in the 4 to 12 age bracket. It adopted as its trade name and brand the words "Blue Chips". From questioning by defendants' counsel of plaintiff's witnesses, it appears that the distribution of this new brand to retail outlets started only a few months ago.

The present action, as aforesaid, is one for trade-mark infringements and unfair competition, the plaintiff taking the position that the word "Chips" as a brand name for boys' juvenile clothing has acquired a distinctive meaning in the trade so that buyers generally, as well as the public, associate any juvenile boys' clothing bearing that brand name with the plaintiff and the goods so distributed as the product of the plaintiff. In support of this contention testimony was introduced before me on the motion for preliminary injunction showing that over the past seven years in the industry's prominent trade magazines, in nationally distributed magazines, such as Life, and daily newspapers of general circulation, the company itself has spent $750,000 in general advertising of the brand name. This sum has been matched by customers of the plaintiff, all of the advertising being of a cooperative nature, so that the total cost of national advertising for the past seven years amounts to $1,500,000. In addition plaintiff produced testimony of one retailer and three officers of the company in support of its position that the brand word "Chips" when used on juvenile clothing has acquired a distinctive meaning in that field to the extent that any garment so labeled is associated in the minds of both retailers and the general public with the product of the plaintiff corporation. The retailer above mentioned strongly supported the contention of the plaintiff and stated as a fact that while he personally, because of his intimate knowledge of the entire industry, would not be confused, it was his decided opinion that not only would the public generally be confused but even his sales force would associate the words "Blue Chips" with the product of the plaintiff corporation. There was testimony also that one buyer of a national chain of department stores (Higbee of Cleveland) in August of 1956 had informed officers of the plaintiff corpora-

tion that there was no necessity to further carry its line since by carrying defendant's branded line "Blue Chips" they would get full advantage of the public's acceptance of the plaintiff's brand "Chips".

Section 1114 of Title 15 U.S.C.A., Act of July 5, 1946, c. 540, Tit. VI, § 32, 60 Stat. 437, provides in part:

"(1) Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services; * * * shall be liable to a civil action by the registrant for any or all of the remedies hereinafter provided in this chapter, * * *."

Plaintiff vigorously contends that because of the similarity of names that it has made a prima facie case of infringement under the terms of the above statute. It further contends that even without the benefit of the statute, the use of the dominant feature "Chips" in defendant's advertising under the brand name "Blue Chips" is likely to cause such confusion or mistake as to deceive purchasers as to the source of origin of such goods, thus constituting a clear case of unfair competition. It contends that the action of the buyer of the Higbee store in Cleveland substantiates this position, and plaintiff's vice-president stated as a fact that it was this experience and all the implications flowing from it that moved the officers of the company to institute the present action.

■■ An examination of the goods of the two manufacturers, the plaintiff and the defendant, which were produced at the hearing, clearly demonstrates that the plaintiff makes a far superior garment. Goods which are manufactured by Blue Jeans Corp. to be sold by the retailer for $6.98 can be sold by the plaintiff only if they will bring the retail price of $13.98 and higher. Even the one witness produced by the defendant admitted that the garments manufactured by the plaintiff were of superior quality and workmanship. Clearly then, if by the actions of a newcomer in the field in the use of a deceptively similar name and by manufacturing and selling similar articles of inferior quality, the newcomer can take advantage of good will built up by the plaintiff over a period of years and so confuse the public that members thereof will believe they are purchasing plaintiff's goods, irreparable harm must result to the plaintiff directly in its business and to the good will built up at great expense over a long period of years. Sunbeam Lighting Co. v. Sunbeam Corp., 9 Cir., 1950, 183 F.2d 969; Alexander Young Distilling Co. v. National Distilling Products Corporation, D.C., 40 F.Supp. 748, affirmed 3 Cir., 1942, 127 F.2d 727; Bunte Bros. v. Standard Chocolates, Inc., D.C.Mass.1942, 45 F.Supp. 478; Callmann, The Law of Unfair Competition and Trade-Marks, § 88.3, (a) and (b) (1950); Toulmin, Trade-Mark Act of 1946, § 34 (1946). Damage to an intangible value such as good will can never be accurately ascertained and may justify the issuance of a preliminary injunction which in itself is an extraordinary remedy not to be issued unless the facts offered to justify such issuance be fully, definitely and precisely disclosed. Sunbeam Lighting Co. v. Sunbeam Corp.; Alexander Young Distilling Co. v. National Distilling Products Corp.; Bunte Bros. v. Standard Chocolates, Inc., Callmann, The Law of Unfair Competition and Trade-Marks; Toulmin, Trade-Mark Act of 1946, supra. There must be a complete balancing of the equities and unless the Court is convinced of immediate and irreparable harm, the matter should be first completely litigated before the use of so drastic a remedy. See cases cited above.

■■ There has been no challenge in this case either to the validity of any

of the trade-marks above referred to (compare with Park & Tilford Import Corp. v. Hunter Baltimore Rye, Inc., D.C.S.D.N.Y.1933, 5 F.Supp. 888 (title in doubt; and cases involving non-competing lines), or has there been any challenge to the jurisdiction of the Court to litigate the matter, both defendants having entered general appearances. It becomes a problem for the Court, therefore, in its discretion to determine under the facts as adduced whether a showing of clear, immediate and irreparable harm to the plaintiff has been made. Logically it follows that if defendant's brand name is so deceptively similar to the brand name and trade-mark of the plaintiff so as to cause confusion in the mind of the buying public or that it is likely so to do, a preliminary injunction should issue. This conclusion gains added strength when we consider that plaintiff and its predecessors have been in the business of manufacturing boys' clothing for upwards of forty years and the defendant Blue Jeans Corp. has entered the field very recently. And of particular importance is the fact that these inferior goods are sold to the same type of stores, to the same class of purchasers, and they are distributed in the same manner. Compare Sunbeam Lighting Co. v. Sunbeam Corp., 9 Cir., 1950, 183 F.2d 969 with Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 1951, 191 F.2d 141, 144. Considering all of the evidence produced at the preliminary hearing, it is the considered opinion of the Court that plaintiff has established a prima facie case and that the Court should, under the circumstances, exercise its discretion in favor of the issuance of the requested preliminary injunction.

The evidence produced up to this stage of the proceeding indicates that the word "Chips" has acquired a secondary meaning in the trade so that goods labeled with the "Chips" brand are considered to be the product of the plaintiff, and the public generally would consider plaintiff as the source of origin of such goods so branded. The addition of the word "Blue" does not, in the opinion of the Court, so distinguish the goods of the defendants as to avoid mistake and confusion between plaintiff's and defendant's products. The testimony at the preliminary hearing indicated that the public generally has recognized the brand name "Chips" in purchases of boys' clothing; even the buyer for defendant Strawbridge & Clothier admits calls for such goods have been made by the brand name "Chips". It is also true that the defendants have not had an opportunity to fully present their case and may at final hearing be able to overcome the prima facie case established at the preliminary hearing. Under the circumstances, the Court will grant a preliminary injunction but will require the plaintiff to post a substantial bond in the sum of $25,000 for the payment of such costs and damages which may be incurred or suffered by either of the defendants should the final outcome of the case determine that they have been wrongfully enjoined or restrained. Should any of the parties feel that the required bond is too large or too small, upon proper motion, the Court will give consideration to an adjustment of the amount specified.