## The VILLAGER, INC.
### v.
## DIAL SHOE COMPANY, Inc.
### Civ. A. No. 40377.

United States District Court
E. D. Pennsylvania.
July 21, 1966.

George A. Burnstein, Philadelphia, Pa., for plaintiff.

Allen J. Levin, Theodore R. Mann, Philadelphia, Pa., for defendant.

## SUR MOTION FOR PRELIMINARY INJUNCTION

JOHN W. LORD, Jr., District Judge.

The plaintiff, The Villager, Inc., upon filing its complaint of May 27, 1966, against Dial Shoe Company, Inc., also filed a Motion for a Preliminary Injunction, in response to which this Court entered an order to

> "show cause, if any there be, why, pending the final disposition of the matters involved in Plaintiff's suit, that Dial Shoe Company, Inc. * * * should not be enjoined * * * as to the use of the name 'Miss VILLAGER' in connection with the offering for sale * * * of wearing apparel and accessories and other related products."

A hearing on the motion was had on June 10, 1966. Witnesses were examined and cross-examined, and numerous exhibits were received into evidence.

In addition to the briefs and proposed findings of fact and conclusions of law submitted in advance of that hearing, both parties have since submitted comprehensive supplementary briefs. The pleadings, notes of testimony, and exhibits have been carefully reviewed. All points and authorities covered in the briefs and argument have likewise been studied, analyzed, and compared. The matter is accordingly in position for disposition in accordance with the findings of fact, discussion, conclusions of law, and order which appear after the following abbreviated preliminary statement.

## PRELIMINARY STATEMENT

Lest there be undue repetition herein, because findings of fact and conclusions of law will follow, this initial statement will be confined to the barest minimum statement necessary to an understanding of the nature of this controversy. It must be understood that the following introductory statements are to give way and be subject to the more precise and detailed statements of the findings of fact which follow thereafter.

Defendant is the older of the two companies, having been for 40 years in the business of selling shoes in Pennsylvania and surrounding states (N.T. 92). It does no manufacturing; it sells relatively low-priced shoes through its chain or chains of retail stores (N.T. 85).

For ten years the Plaintiff has been in the business of advertising, selling and distributing a line of women's wearing apparel and accessories as THE VILLAGER and, more recently, JUNIOR VILLAGER. These VILLAGER products are relatively high-priced and are sold in the more exclusive shops and department stores (N.T. 20). Sales and advertising have been nation-wide; and the increase in the sales (and advertising) of THE VILLAGER clothing and accessories has been remarkable.

Plaintiff's lines (THE VILLAGER and JUNIOR VILLAGER) have not included shoes, but Plaintiff has for some time been developing a line of shoes which it plans to start marketing in the fall of 1966.

Meanwhile Defendant began using the brand name Miss VILLAGER on a line of shoes. On June 10, 1966, Defendant had on hand at least 15,000 pairs of shoes boxed as Miss VILLAGER and imprinted with that brand name on the sock linings of the shoes.

Plaintiff alleges infringement of its registered trademarks under federal and state law and seeks permanent injunction; damage for injuries to its goodwill and reputation as the result of unfair competition; reasonable attorney fees; and costs. The only relief sought by the

present motion, however, is a preliminary injunction against further use of the brand name Miss VILLAGER on shoes.

Jurisdiction has not been challenged. Not only is there diversity of citizenship and jurisdictional amount—but also there is clear jurisdiction under the trademark statutes (as will more fully appear in due course). Time, Inc. v. Life Television Corp., 123 F.Supp. 470, 473 (D.Minn. 1954).

Plaintiff's motion will be granted for the reasons set forth hereafter. Rule 65(d), Fed.R.Civ.P.

## FINDINGS OF FACT

1. Plaintiff, The Villager, Inc., is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business located at Richmond & Allegheny Avenue, Philadelphia, Pennsylvania (N.T. 5, 19).

2. Defendant, Dial Shoe Company, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, having its principal place of business located at 4225 Chestnut Street, Philadelphia, Pennsylvania.

3. Since June, 1956 the Plaintiff and its predecessors have been engaged in the advertising, sale and distribution of women's wearing apparel, accessories and other related products under the trademark THE VILLAGER namely shirts, blouses, dresses, jackets, sportswear, slacks, neckwear, belts, suspenders, dickies, kerchiefs, headbands, sashes, cummerbunds, sweaters, kilts, dress ensembles of skirts and blouses, blouses and slacks, sweaters and slacks, and sweaters and skirts, and raincoats (N.T. 5–52).

4. Since 1960 the Plaintiff has advertised young women's wearing apparel, accessories and other related products under its registered trademark JUNIOR VILLAGER, namely, dresses, shirts, blouses, slacks, jackets, coats and skirts (N.T. 52, 53; Exh. P–27).

5. Since 1959 the Plaintiff and its predecessors have used the tradename THE VILLAGER in connection with the advertising, sale and distribution of women's wearing apparel, accessories and other related products (N.T. 19).

6. The trademarks THE VILLAGER and JUNIOR VILLAGER have been registered in the United States Patent Office and with the Office of the Secretary of the Commonwealth of Pennsylvania as follows:

United States Patent Office Registration No. 702,965 (THE VILLAGER), registered August 16, 1960 in Class 39 for women's wear—namely, shirts, blouses, dresses, jackets, and sportswear.

United States Patent Office Registration No. 756,955 (THE VILLAGER and design), registered September 17, 1963 in Class 39 for women's wear—namely, shirts, blouses, dresses, jackets, and sportswear.

United States Patent Office Registration No. 763,997 (THE VILLAGER), registered January 28, 1964 in Class 39 for shirts, blouses, dresses, jackets, slacks, neckwear, belts, suspenders, dickies, kerchiefs, headbands, sashes, cummerbunds, sweaters, kilts, dress ensembles of skirts and blouses, blouses and slacks, sweaters and slacks, and sweaters and skirts, and raincoats.

United States Patent Office Registration No. 765,182 (JUNIOR VILLAGER), registered February 18, 1964 in Class 39 for dresses, shirts, blouses, slacks, jackets, coats and skirts.

Pennsylvania Registration No. 3–1–56.21950 (THE VILLAGER), registered 7/5/56 in Class 39 for clothing.

Pennsylvania Registration No. 3–1–63.15303 (JUNIOR VILLAGER), registered 5/20/63 in Class 39 for clothing.

Pennsylvania Registration No. 3–1–63.15305 (JUNIOR VILLAGER and design), registered 5/20/63 in Class 39 for clothing. (N.T. 53; Exhs. P–25, P–26, P–27).

7. Sales of the Plaintiff and its predecessors under the trademarks THE VILLAGER and JUNIOR VILLAGER have steadily improved since their initial

adoption and use and such sales have increased from two million dollars in 1961 to over fourteen million dollars in 1965. They anticipate sales of approximately twenty million dollars in 1966 (N.T. 19, 25, 26).

8. Since 1961 The Villager, Inc. has advertised and promoted its trademarks throughout the United States. During this period, The Villager, Inc. has actively promoted and advertised such trademarks in magazines such as Glamour, Harper's Bazaar, Mademoiselle, Saturday Review, The New Yorker, and Vogue, all of which are distributed on a national basis throughout the United States. During this period, in addition to the magazine advertising program, these trademarks have been extensively advertised in newspapers and other print media. The advertising expenditures since 1961 have been in excess of one million dollars (N.T. 26, 27, 41–51).

9. The Plaintiff's trademarks have been extensively advertised throughout the United States in newspapers and other media by retail outlets offering Plaintiff's products for sale to the public (N.T. 49–51).

10. That as a result of the extensive sales of the Plaintiff's goods and its advertising promotional efforts the Plaintiff's trademarks have become well and favorably known to the general public and trade to identify the Plaintiff's goods, and they identify the source and origin of the Plaintiff's goods and represent substantial good will.

11. Dial Shoe Company and its subsidiaries operate approximately 49 shoe stores in the Philadelphia metropolitan area, which includes New Jersey. Some of the store locations are as follows: 52nd and Chestnut Streets; 4601 Frankford Avenue; 7302 Frankford Avenue; 63rd and Woodland Avenue; 2649 Germantown Avenue; 3605–07 Germantown Avenue; 5522–24 N. 5th Street (N.T. 80, 81, 86).

12. Without prior trademark search or market investigation, and also without Plaintiff's permission or advance knowl-edge, the Defendant began to use "Miss VILLAGER" as a trademark on shoes and on the boxes containing such shoes; and such shoes shoe boxes have been sold or stocked in all stores operated by Dial (N.T. 90, 92, 96).

13. VILLAGER is the dominant feature of Plaintiff's trademarks; and in its use of the trademark "Miss VILLAGER" the Defendant has caused the name VILLAGER to be displayed in large, bold lettering which has much greater prominence than the word "Miss" (N.T. 36; Exhs. P–32, P–35).

14. Defendant has approximately fifteen to sixteen thousand (15,000–16,000) pairs of shoes on hand bearing the trademark "Miss VILLAGER" (N.T. 84, 90; Exh. P–46).

15. Upon learning that Defendant was using the trademark "Miss VILLAGER" on shoes, the Plaintiff instructed its counsel to make demands upon the Defendant to discontinue its unauthorized use of VILLAGER. Such demand was made, but has not been complied with, and Defendant has refused to discontinue its unauthorized use (N.T. 83, 89; Exhs. P–44, P–45).

16. Shoes sold by Dial Shoe Company, Inc. under the trademark "Miss VILLAGER" sell in the range of six to ten dollars and are of lesser quality than the shoes to be sold by the Plaintiff and of the other goods presently sold by the Plaintiff (N.T. 59, 60, 63, 65).

17. The Plaintiff since prior to its knowledge of the use of "Miss VILLAGER" by the Defendant, has intended to use its VILLAGER trademarks on women's and girls' shoes. The Plaintiff has designed shoes to be sold under the VILLAGER trademarks and has placed orders with shoe manufacturers for shoes bearing this trademark (N.T. 9, 14, 27, 28, 58, 59, 67; Exh. P–5, P–36).

18. The cost to change the sock liners of a pair of women's shoes so as to bear a new trademark is approximately fifteen to eighteen cents (15¢ to 18¢) per pair (N.T. 69).

19. The shelf life of women's shoes is approximately two years, and the Defendant's shoes can be maintained in storage for this period (N.T. 69).

20. The cost to purchase new shoe boxes in which to sell the shoes in question would be approximately eight and a half cents (8½¢) per box (N.T. 68).

21. To the cost of relining and reboxing women's shoes (Findings 18 and 20 above) should be added 8¢ to 10¢ per pair for necessary transportation to and from a central warehouse for such purpose (N.T. 90).

22. There are many trademarks registered for women's apparel in the United States Patent Office which include the word "Miss". The word "Miss" when used in connection with wearing apparel in general indicates clothes directed to young ladies. The term "Miss" has little or no trademark significance (N.T. 51, 52).

23. Women's apparel and shoes are advertised together in magazines, newspapers and other print media. They are also sold in close relationship to each other in department stores and women's specialty shops. Shoes are included in the broad terminology "wearing apparel".

24. Salesmen in the stores owned and operated by Dial Shoe Company, Inc. have attempted to pass off the Defendant's "Miss VILLAGER" shoes as those of Plaintiff by making an association with the famous VILLAGER trademarks (N.T. 75–82).

## DISCUSSION

The fact that the trademark THE VILLAGER has achieved important status in the women's clothing field is undeniable. It likewise seems apparent that the good will of Plaintiff will be damaged if Defendant is not enjoined from the use of the confusingly similar mark "Miss VILLAGER" on shoes pending the outcome of trial. That conclusion is supported by ample authority including the following cases.

In the case of Triangle Publications, Inc. v. Standard Plastic Products, 241 F. Supp. 613 (E.D.Pa.1965), the Court preliminarily enjoined the Defendant from using "Miss SEVENTEEN" upon luggage sold by it. The Court indicated that such action was necessary to prevent the Plaintiff from suffering great and inestimable damage to its good will. The Court said at page 618:

"The court finds that the promotion and sale of defendant's MISS SEVENTEEN merchandise will detract from and cause damage to the reputation and goodwill attached to plaintiff's publication, in the development of which over the past 20 years plaintiff has spent substantial sums of money."

Similarly, in the case of Chips 'N Twigs v. Blue Jeans Corp., 146 F.Supp. 246 (E.D.Pa.1956), the Court preliminarily enjoined the Defendant from using the trademark BLUE CHIPS. The Court at page 248 observed that:

"* * * Damage to an intangible value such as good will can never be accurately ascertained and may justify the issuance of a preliminary injunction which in itself is an extraordinary remedy not to be issued unless the facts offered to justify such issuance be fully, definitely and precisely disclosed."

At page 249, the Court commented further:

"Logically it follows that if defendant's brand name is so deceptively similar to the brand name and trade-mark of the plaintiff so as to cause confusion in the mind of the buying public or that it is likely so to do, a preliminary injunction should issue. This conclusion gains added strength when we consider that plaintiff and its predecessors have been in the business of manufacturing boys' clothing for upwards of forty years and the defendant Blue Jeans Corp. has entered the field very recently. And of particular importance is the fact that these inferior goods are sold to the same type of stores, to the same

class of purchasers, and they are distributed in the same manner."

Other cases wherein a preliminary injunction was granted to enjoin one from using a trademark identical to or confusingly similar to that of a competitor include: Adam Hat Stores, Inc. v. Rice, 37 F.Supp. 261 (W.D.Pa.1941); Gamlen Chemical Co. v. Gamlen, 79 F.Supp. 622 (W.D.Pa.1948); Warner Bros. Records, Inc. v. Warner Music, Inc., 167 F.Supp. 661 (S.D.N.Y.1958); Ambassador East, Inc. v. Shelton Corners, Inc., 120 F.Supp. 551 (S.D.N.Y.1954).

In considering the balance of equities between the Plaintiff and the Defendant, this Court must look at the possible damage to be suffered by the Defendant if it is preliminarily enjoined. It is contended that the Defendant will suffer little, if any, damage. The Defendant need not destroy its shoes on hand. The shelf life of the shoes is sufficient so as to provide ample time for the case to reach trial without deterioration of the shoes. If the Defendant is ultimately successful at trial, it may at that time resume selling the shoes in question. In addition, the Defendant for a moderate cost may modify the sock lining of the shoe and use new shoe boxes, both bearing a trademark other than "Miss VILLAGER" and presently sell the shoes in its normal course of business. Such inconvenience and expense is small in comparison to the damage the Plaintiff is likely to suffer.

The point last mentioned is illustrated by the following comparison. There was uncontradicted testimony that Plaintiff's anticipated sales for 1966 are twenty million dollars ($20,000,000) (Finding No. 7). The advertising budget for the year is in excess of a half-million dollars ($500,000) (N.T. 27, 46). Yet to secure the Defendant, under the testimony incorporated in the relevant Findings of Fact Nos. 18 to 21 inclusive, the bond required to be posted by Plaintiff is to be $15,000. As required by Rule 65(c), Fed.R.Civ.P., Plaintiff must post security in an amount sufficient to indemnify any and all persons who sustain loss as the result of wrongful injunction. But there appears to be no way, under the facts as found, in which Defendant's loss could exceed $15,000, which amounts to 0.00075, or 75/1000 of 1%, of Plaintiff's sales estimate for the current year.

### Defendant's Adoption and Use of "Miss VILLAGER" as Acts of Trademark Infringement and Unfair Competition

It is well established that before a preliminary injunction will be granted, the Plaintiff must establish that it is likely to prevail at the trial of the case on its merits. Thus, the following discussion is directed toward the likelihood that the Plaintiff will prevail at trial.

### (a) Confusion of Source

The common law test of trademark infringement has long been established. McLean v. Fleming, 96 U.S. 245, 253, 24 L.Ed. 828 (1878). It was codified in § 32(1) of the Trade Mark Act of 1946, 15 U.S.C.A. § 1114(1), which provides in part:

"Any person who shall, without the consent of the registrant—

"(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use *is likely to cause confusion, or to cause mistake, or to deceive; * * *."* (Emphasis added.)

It is significant to note that by the established tests, common law and statutory, it is merely required that confusion, mistake or deception be "likely"; actual confusion need not be present. Telechron, Inc. v. Telicon Corp., 198 F.2d 903, 909 (3rd Cir. 1952); Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609 (7th Cir. 1965)—cases collected at pages 611 and 612.

It is also important to note that the statute used the word *or* rather than *and* in the phrase " * * * is likely to cause confusion, or to cause mistake, or to deceive." Accordingly, the likelihood that any one of these may occur is suffi-

cient to bring a case within the terms of the statute.

In making the determination of whether confusion, mistake or deception is likely, the test set forth in the Restatement of Torts, Vol. 3 § 729 (1938), appears to be generally accepted. Sears, Roebuck and Co. v. Johnson, 219 F.2d 590, 592 (3rd Cir. 1955); Triangle Publications, Inc. v. Standard Plastic Products, 241 F.Supp. 613, 620 (E.D.Pa. 1965).

The Restatement of Torts, Volume 3, Section 729 (1938) at pages 592 and 593, provides:

> "In determining whether the actor's designation is confusingly similar to the other's trademark or trade name, the following factors are important:
>
> "(a) the degree of similarity between the designation and the trademark or trade name in
>
>   (i) appearance;
>
>   (ii) pronunciation of the words used;
>
>   (iii) verbal translation of the pictures or designs involved;
>
>   (iv) suggestion;
>
> "(b) the intent of the actor in adopting the designation; .
>
> "(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;
>
> "(d) the degree of care likely to be exercised by the purchasers."

In this case it appears unnecessary to comment at length upon the similarity in appearance, pronunciation and suggestion between the Plaintiff's trademarks and the Defendant's trademark; however, the following aspects merit mention.

Defendant's use of the trademark "Miss VILLAGER" emphasizes the word VILLAGER, which is the essence of Plaintiff's trademarks (Finding No. 13).

The Defendant's argument that the prefix "Miss" is sufficient to distinguish the respective marks is contrary to the decisions in this branch of law. Tri-angle Publications, Inc. v. Standard Plastic Products, 241 F.Supp. 613, 618 (E.D. Pa.1965)—and note the many cases collected at page 620; Triangle Publications v. Rohrlich, 167 F.2d 969 (2nd Cir. 1948).

**(b)** *Motives of Defendant in Adopting "Miss VILLAGER"*

Mr. Edward Spector, President of Dial Shoe Company, did not satisfy the Court with his explanation of Defendant's decision to adopt the brand name in question (N.T. 86). Its gist was that in 1964 a new look in shoes developed " * * * what we thought of as kookie shoes, sort of" (N.T. 86). " * * * the so-called Greenwich Village look was coming into vogue * * *" (N.T. 87). And thus, he explained, " * * * eventually this name, 'Miss VILLAGER', was suggested [and adopted]" (N.T. 88).

He testified on cross-examination that his company made no search of the trademark registrations in the United States Patent Office in Washington, D. C. (N.T. 96), and that to do so was not their practice:

> " * * * We are very familiar with the names that are used in the shoe business. We are very familiar with all of the trademarks that are used in the shoe business. This was not one of them." (N.T. 96)

Shortly thereafter in his testimony he denied familiarity with THE VILLAGER as a line of women's apparel. Asked if it was ever brought to his attention, he denied having seen it, saying

> "I have not been active in styling or anything of this nature. My job has been mainly in an administrative capacity. * * * If I [ever saw advertising of 'THE VILLAGER'] * * * it had no impression on me. I don't ever remember seeing it." (N.T. 98)

At any rate, Defendant is charged with notice of registered trademarks, under § 22 of the Trademark Act of 1946 (15 U.S.C.A. § 1072):

> "Registration of a mark on the principal register provided by this chapter, or under [prior acts] shall be con-

structive notice of the registrant's claim of ownership thereof."

■ Notice is a principal feature and advantage of trademark registration. Quality Courts United, Inc. v. Quality Courts, 140 F.Supp. 341, 347 (M.D.Pa. 1956). And use of a senior trademark after notice of infringement, regardless of notice at the time of adoption, is at the junior user's peril. Telechron, Inc. v. Telicon Corp., 198 F.2d 903, 908 (3rd Cir. 1952).

(c) *Goods of the Plaintiff and the Defendant Are Related*

One of the remaining factors to be considered is the relationship between the goods of the respective parties and the manner of marketing the goods.

Defendant argues that shoes are, for trademark purposes, unrelated to women's apparel. This position completely ignores the realities of the market place, as well as the manner of use of such products.

■ It is common knowledge that many companies sell under one trademark complete lines of apparel including shoes. The following examples come to mind: Bonwit, Capezio, Dior, and Jantzen. In this regard, a quote from the case of Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607 (2nd Cir. 1960) is most applicable:

"This is a case where distinctive marks, which for all practical purposes are identical, are used on closely related goods which serve both common functions and common purchasers. Moreover, the defendants' goods are marketed in a high percentage of the plaintiffs' retail channels, in some instances, in fact, being sold in the same floor of leading New York department stores. There was uncontradicted evidence that a number of well known trade marks in the women's apparel field—Dior, Capezio, Jantzen and Schiaparelli—are used to denote a common source for shoes and sportswear. We assume that this fact is common knowledge to many women purchasers who are, in the words of

the trial court, possessed of a 'certain degree of sophistication.' And if, as we have no reason to doubt, these consumers are also 'discriminating' and 'choosey and selective,' their necessary reliance upon labels would only heighten the possibility of confusion."

■ It is also common knowledge that shoes and wearing apparel are sold together in department stores and women's specialty shops. In addition, such goods are advertised and promoted together in various advertising media. Furthermore, such goods are worn together. Thus, this association of the goods of the respective parties hereto is such that similar trademarks used upon them would cause confusion, mistake or deception.

A fact situation similar to the instant case was present in the case of Rosenberg Bros. & Co. v. Elliott, 7 F.2d 962 (3rd Cir. 1925). In this case, the Court found that the trademark FASHION PARK used upon both hats and clothing was likely to cause confusion. The Court said at page 966:

"It is common knowledge that men's clothing and men's hats and caps are worn together. According to the evidence in this case, they are ordinarily sold together. They flow through the same channels of trade. Dealers in this country who sell men's suits and overcoats almost universally sell men's hats and caps. And they are advertised together."

Likewise, as previously stated, in the case of Triangle Publications, Inc. v. Standard Plastic Products, 241 F.Supp. 613 (E.D.Pa.1965), the Court found the trademark "Miss SEVENTEEN" as used with luggage likely to cause confusion with SEVENTEEN as used with a magazine. Also, in the case of Triangle Publications, Inc. v. Rohrlich, 167 F.2d 969 (2nd Cir. 1948), the Court found "Miss SEVENTEEN" as used with girdles likely to cause confusion with the SEVENTEEN trademark for a magazine.

Thus, the case law seems settled that the goods of the respective parties need not be identical nor directly competitive. Infringement is present when the products are sufficiently related so that prospective purchasers would be likely to believe that they emanate from a single source or that they are in some way sponsored by a single source. Safeway Stores v. Dunnell, 172 F.2d 649, 655 (9th Cir. 1949); cert. den. 337 U.S. 907, 69 S.Ct. 1049, 93 L.Ed. 1719 (1949); Stork Restaurant v. Sahiti, 166 F.2d 348, 359 (9th Cir. 1948). The case of Fleischmann Distilling Corp. v. Maier Brewing Company, 314 F.2d 149, at page 151 (9th Cir. 1963), cert. den. 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963) sets forth this proposition quite clearly:

"However, the Lanham Act of 1946 (60 Stat. 427, 15 U.S.C. § 1051 et seq.) made plain that infringement might be found and prohibited, though the use of the registered mark was upon goods having different descriptive properties than those set forth in the registration, and though in consequence there was no actual competition between the parties. This Act prohibits use without the registrant's consent 'of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services.' "

In the case of North American Air. Sys. v. North American Aviation, 231 F.2d 205, at page 211 (9th Cir. 1955), cert. den. 351 U.S. 920, 76 S.Ct. 709, 100 L.Ed. 1452 (1956); this same proposition was commented upon:

"Defendants' claim is that the exclusive use of the name by plaintiff must be confined to the manufacture of airplanes and that the name cannot be used exclusively in the air transportation field. Thus they claim that they are not in competition with plaintiff. Under the authorities, competition is not a condition precedent to the granting of an injunction."

In the case of J. N. Collins Co. v. F. M. Paist Co., 14 F.2d 614 (E.D.Pa.1926), the Court found that the public was entitled to be protected from confusion, mistake and deception. The Court said at pages 615–616:

"The law has a threefold object in unfair competition cases: First, to protect the honest trader in business which fairly belongs to him; second, to punish the dishonest trader, who is taking his competitor's business away by unfair means; and, third, to protect the public from deception. It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks, and coverings which by no possibility can cause confusion between his goods and those of competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to the dress of those of his business rival that the public may fail to distinguish between them. The law is not made for the protection of experts, but for the public—that vast multitude, which includes the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearance and general impressions."

(d) *Unfair Competition*

What has already been said as to trademark infringement is sufficient to show the likelihood that Plaintiff will be able to prove that Defendant has been guilty of unfair competition. Trademark infringement is recognized to be an aspect of the broader field of unfair competition. Stork Restaurant v. Sahiti, 166 F.2d 348, 359 (9th Cir. 1948).

In Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, at page 413, 36 S.Ct. 357, at page 360, 60 L.Ed. 713 (1916), the Court said:

" * * * In fact, the common law of trademarks is but a part of the broad-

er law of unfair competition [citing cases] * * *."

Facts supporting a suit for trademark infringement and one for unfair competition are substantially identical. This is well recognized and was so stated in Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, at page 325, 59 S.Ct. 191, at page 196, 83 L.Ed. 195 (1938), wherein it was said:

" * * * The facts supporting a suit for infringement and one for unfair competition are substantially the same. They constitute and make plain the wrong complained of, the violation of the right to exclusive use."

### Cases Cited by Defendant

Defendant has argued and briefed a number of cases wherein preliminary injunctions have been denied in infringement and unfair competition actions. To consider all in detail would be unwarranted, since none proved to have much applicability. To dismiss them without comment, however, would not do justice to Defendant's right to be heard, and counsel's conscientious efforts to better his client's obviously rather difficult position. By way of compromise, therefore, eight of such cases will be listed here, followed by the briefest possible indication of why, in this Court's opinion, the case is not controlling here.

1. Meredith Publishing Company v. Universal Publishing & Distributing Corp., 199 F.Supp. 27 (S.D.N.Y.1961). In the eight word title of a single-publication book, there appeared prominently the words *Better* and *Homes*. Held: in consideration of all circumstances, the danger that those words would damage the reputation or confuse purchasers of the *Better Homes* magazines was insufficient to warrant preliminary injunction.

2. Federal Telephone & Radio Corp. v. Federal Television Corp., 180 F.2d 250 (2nd Cir. 1950). No distinctive marks were involved. There was no showing that the product of the alleged infringer was inferior. The products did not compete. The possibility of confusion or damage was held conjectural and insubstantial.

3. Puritan Sportswear Corp. v. Puritan Fashions Corp., 232 F.Supp. 550 (S.D.N.Y.1964). For fifty years both parties had been using the PURITAN name. The goods in question were non-competing. The respective styles of display of the name were not confusingly similar. Most of all, the case involved sharply disputed and complicated issues of fact which were not appropriate for decision on an application for preliminary injunction.

4. Sunrise Home Juices, Inc. v. Coca-Cola Co., 220 F.Supp. 558 (S.D.N.Y. 1963). On all the facts, there was no showing to warrant preliminary injunction on behalf of SUNRISE ORANGE DELIGHT as against MINUTE MAID ORANGE DELITE.

5. Atlantic Monthly Co. v. Frederick Ungar Publishing Co., Inc., 185 F.Supp. 221 (S.D.N.Y.1960). On all the facts, there was not sufficient threat of immediate and irreparable injury to warrant injunction against "Atlantic Paperbacks" at the instance of the "Atlantic Monthly" magazine.

6. American Radiator & Standard Sanitary Corp. v. Sunbeam Corporation, 125 F.Supp. 839 (S.D.N.Y.1954). For over 25 years, each party had been using the name SUNBEAM in its own particular style on its own particular goods. The word SUNBEAM is used for a great number and variety of products. Disputed questions of fact as to possibility of confusion, and as to whether plaintiff had pre-empted the air-conditioner field precluded preliminary injunction.

7. Defendant has cited the first of the three HAYMAKER cases, i. e. Avon Shoe Co., Inc. v. David Crystal Inc., 117 F.Supp. 548 (S.D.N.Y.1953). Therein preliminary injunction was denied on several grounds including lack of priority, laches, and extremely doubtful issues of fact.

That exercise of judicial discretion was confirmed by the result of the trial, 171 F.Supp. 293 (S.D.N.Y.1959) and af-

firmed in 279 F.2d 607 (2nd Cir. 1960), already cited and quoted in this opinion.

8. Dymo Industries, Inc. v. Tapeprinter, Inc., 326 F.2d 141 (9th Cir. 1964). Preliminary injunction held per curiam to have been properly denied on behalf of TAPEWRITER embossing machine against use of TAPEPRINTER. One leading ground for such denial was the "doubtful and difficult question of whether or not the mark TAPEWRITER is so descriptive of a product that writes on plastic and metal tapes as to make it ineligible for registration * * *" 326 F.2d 141, 143.

It is obvious that the foregoing represent cases involving trademarks, products, and factual situations which are clearly distinguishable from that at hand. Close reading of those cases will reveal still other points of difference if further differentiation be required. That is to say, that Defendant's cases in the light of the facts heretofore found, are insufficient to warrant the conclusions for which Defendant's counsel has so skillfully and persuasively argued: i. e., that this is not a case for preliminary injunction; that the Plaintiff and Defendant are not in direct competition; that Defendant is beyond question an innocent user and clearly not guilty of unfair competition; and that Defendant's use of "Miss VILLAGER" in no way threatens irreparable harm to Plaintiff.

To the contrary, the facts and the law seem at this juncture to weigh heavily on Plaintiff's side. Accordingly, the Court reaches and states the following

CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties.

2. The case is a proper one for a preliminary injunction.

3. The Plaintiff is the owner of the trademarks THE VILLAGER and JUNIOR VILLAGER. The trademarks THE VILLAGER and JUNIOR VILLAGER have been registered in the United States Patent Office and with the Office of the Secretary of the Commonwealth of Pennsylvania on the respective dates set forth below; all of said registrations are valid, presently subsisting, uncancelled and not abandoned.

| TRADEMARK | REGISTRATION NO. | REGISTRATION DATE |
|---|---|---|
| United States Patent Office | | |
| THE VILLAGER | 702,965 | 8/16/60 |
| THE VILLAGER and design | 756,955 | 9/17/63 |
| THE VILLAGER | 763,997 | 1/28/64 |
| JUNIOR VILLAGER | 765,182 | 2/18/64 |
| Commonwealth of Pennsylvania | | |
| THE VILLAGER | 3-1-56.21950 | 7/5/56 |
| JUNIOR VILLAGER | 3-1-63.15303 | 5/20/63 |
| JUNIOR VILLAGER and design | 3-1-63.15305 | 5/20/63 |

4. The VILLAGER trademarks have become well and favorably known to the general public and trade and they identify the source and origin of the Plaintiff's goods. These trademarks represent substantial good will to the Plaintiff.

5. Shoes and wearing apparel are goods of the same general classification.

6. The addition of the word "Miss" is not sufficient to distinguish the goods of the Defendant from those of the Plaintiff so as to avoid confusion, or

mistake or deception of prospective purchasers. "Miss VILLAGER" is confusingly similar to the Plaintiff's VILLAGER trademarks.

7. The adoption and use of "Miss VILLAGER" by the Defendant causes or is calculated to cause Defendant's goods to be passed off as those of the Plaintiff and thus to confuse or mislead the buying public.

8. The Plaintiff's good will will be irreparably harmed and damaged by the Defendant's use of the trademark "Miss VILLAGER" during the pendency of this case. The Defendant will suffer little, if any, damage by the application of a preliminary injunction during the pendency of this case.

9. The Defendant, its employees, agents, representatives, successors, assigns and any and all persons or parties in privity therewith, are preliminarily enjoined and prohibited pending the trial of this case from any and all use of the word VILLAGER or any colorable imitation thereof in regard to the advertisement, sale, offering for sale and distribution of shoes, wearing apparel and other related products.

### ORDER

And now, to wit, this 21st day of July, A. D. 1966, the Motion of Plaintiff for Preliminary Injunction will be granted, conditioned upon filing of bond in the amount of Fifteen Thousand Dollars ($15,000.) in accordance with the provisions of Rule 65(c), Fed.R.Civ.P.

Accordingly, if and when the Plaintiff, THE VILLAGER, INC., shall have posted with the Clerk of this Court, good and sufficient security in the amount of Fifteen Thousand Dollars ($15,000.) for the payment of such costs and damages as may be suffered or incurred by any party who is found to have been wrongfully enjoined or restrained;

It is the ruling of this court that Defendant, DIAL SHOE COMPANY, INC., its agents, servants and employees, are

enjoined from using the name "Miss VILLAGER" on shoes pending judgment following a trial on the merits of the above-numbered civil action.

And it is so ordered.