**WARNER BROS. RECORDS, INC.,** Warner Bros. Pictures, Inc., Music Publishers Holding Corporation, Plaintiffs,

v.

**WARNER MUSIC, INC.,** Defendant.

United States District Court
S. D. New York.
Nov. 28, 1958.

R. W. Perkins, New York City, Joseph D. Karp, New York City, of counsel, for plaintiffs.

Joseph Diamond, New York City, for defendant.

FREDERICK van PELT BRYAN, District Judge.

In this action for unfair competition and trade-mark infringement [1] the plaintiffs have moved for a preliminary injunction.

The three plaintiffs are Delaware corporations. The defendant is a New York corporation.

Jurisdiction rests upon diversity of citizenship, 28 U.S.C. § 1332, and the Lanham Trade Mark Act of 1946, 15 U.S.C.A. § 1121.

The plaintiff, Warner Bros. Pictures, Inc., is a leading motion picture producer. The plaintiffs, Warner Bros. Records, Inc., and Music Publishers Holding Corporation, are wholly owned subsidiaries of Warner Bros. Pictures, Inc. concerned in music publishing and record distribution.

Plaintiffs contend that the defendant, Warner Music, Inc., a manufacturer and distributor of phonograph records, has appropriated the "Warner" name for the purpose of trading upon plaintiffs' good will and reputation and with the intention of deceiving the public into purchasing defendant's records in the belief that they had been manufactured and were being distributed by the plaintiff companies.

Plaintiffs have submitted numerous affidavits and exhibits in support of their contentions.

Harry, Albert and Jack Warner have, since 1913, been in the business of manufacturing and distributing motion pictures under the "Warner" name, first as a co-partnership, and since 1923, as a corporation. In the field of motion picture production and distribution Warner Bros. Pictures, Inc., has been highly successful. Over one thousand feature length motion pictures, including many so-called "musicals", have been distributed by Warner Bros. Pictures since 1923. The Warner companies have been doing business under the "Warner" name not only in this country but in Canada and forty-six other countries as well.

Three trade-marks have been registered in the United States Patent Office by the plaintiff, Warner Bros. Pictures, Inc.:

1. A shield with the letters "WB" and the words "Warner Bros. Pictures, Inc." superimposed (Registered July 14, 1941).

2. A shield with the words "Warner Bros." and the name "Warner Bros. Pictures, Inc." above the shield (Registered Sept. 3, 1935 and renewed Sept. 3, 1955).

3. "Warner Color" (Registered Jan. 3, 1952).

The motion picture enterprises of Warner Bros. Pictures, Inc., have received world-wide publicity and it is well known to the movie-going public. Its activities have not been confined to the motion picture field but have expanded into other areas both within and without the entertainment field.

The plaintiff, Music Publishers Holding Corporation, a Warner subsidiary, owns all or most of the outstanding stock of some of the leading music publishing firms in the United States. Included among these are M. Witmark & Sons, Harms, Inc., and Remick Music Corp. These companies publish, distribute and sell musical compositions, including compositions used in Warner motion pictures.

Plaintiffs have also been active in licensing the manufacture and sale of phonograph records which reproduce the music taken from the sound tracks of Warner Bros. motion pictures. The leading record companies, as licensees, are required to state upon the label of such

1. Plaintiffs also claim violation of the provisions of § 368-c, subd. 3 of the General Business Law of New York and § 964 of the Penal Law of New York.

records that they are taken from a named Warner Bros. motion picture.

Warner Bros. Pictures, Inc., and its affiliated companies, have acquired many different types of businesses in the entertainment field. These include, among others, two film laboratories, foreign studios, a lithography plant, and approximately six hundred theatres in the United States.

In addition to these they have licensed the use of the "Warner" name to manufacturers of games, books, costumes, clothing and toys.

The Warner plaintiffs are also actively engaged in the production of photoplays for television.

In the fall of 1957 it became generally rumored in the entertainment field that the Warner plaintiffs intended to enter the field of record distribution and that records would be distributed under the "Warner" name. In February 1958 the formation of the plaintiff, Warner Records Co., Inc., for this purpose, was formally announced.

The defendant was originally incorporated in 1953 under the name "Parliament Records, Inc." Four and one-half years later, coincident with the time that plaintiffs' entry into the record distribution business had become generally rumored, the defendant's corporate name was changed to "Warner Music, Inc."

No person connected with the defendant has the name Warner. Defendant's only (and highly incredible) explanation for its use of the name is that one of its officers resided near a successful furniture store known as Warner Furniture Company and that this was the origin of the use of the name Warner.

Defendant has and is distributing phonograph records with the name "Warner" on the label and has advertised its records in trade newspapers under that name.

It is clear from the facts presented that the "Warner" name is universally associated in the entertainment field, the music publishing field, and the record field with Warner Bros. Pictures, Inc., and its affiliated companies. The plaintiffs are generally referred to as "Warner", "Warner's" and "The Warner Companies".

Millions of Americans have viewed Warner Bros. motion pictures and television photoplays. Millions have purchased records which feature music from Warner motion pictures.

It is abundantly clear that there are few adults in the United States who have not heard of Warner Bros. Pictures, Inc. That company is known as, and frequently referred to by the public as, "Warner" or "Warners". In the entertainment field especially the names "Warner", "Warners", or "The Warner Companies" stand for the Warner Bros. Pictures, Inc., organization.

Numerous affidavits by executives of recording companies, disc jockeys and program directors substantiate plaintiffs' claim that the name "Warner" is associated with the plaintiff companies. Sam Goody, owner of the largest retail record shop in the United States, has submitted an affidavit in which he states that he purchased the defendant's records in the belief that they were the product of Warner Bros. Pictures, Inc., or its affiliated companies, and that he would not have done so had he known their true origin.

The evidence is overwhelming that the name "Warner" has acquired a secondary meaning and that to the general public "Warner" means Warner Bros. Pictures, Inc., its affiliated companies and licensees. Cf. Federal Glass Co. v. Loshin, 2 Cir., 224 F.2d 100; Maternally Yours, Inc., v. Your Maternity Shop, Inc., 2 Cir., 234 F.2d 538, 544; Wyatt Earp Enterprises, Inc., v. Sackman, Inc., D.C.S.D.N.Y., 157 F.Supp. 621.

It is apparent from the facts before the court that there is a substantial likelihood of confusion and that the public is likely to be deceived if the defendant is permitted to continue the marketing of its records under the "Warner" label. Cf. Maternally Yours Inc., v. Your Maternity Shop, Inc., supra; Federal Glass

Co. v. Loshin, supra; Wyatt Earp Enterprises v. Sackman, Inc., supra; 15 U.S.C.A. § 1114(1).

The applicable rule of law is concisely set forth in 1 Nims, Unfair Competition and Trade-Marks (4th ed.), § 90, page 270, as follows:

"The sum of the whole matter seems to be this: If a plaintiff has used his family name in a business so that the name has acquired a secondary meaning when used in that business, and if defendant's use of a corporate name in which that same family name appears is likely to cause confusion or to misrepresent, the defendant must change its name, unless it can show that its use of the name is reasonable and not fraudulent. Even if defendant's original adoption of its corporate name was innocent, it must change its corporate name since an affirmative duty rests upon defendant to differentiate itself from the plaintiff, and failure so to do is evidence of fraud."

In R. H. Macy & Co., Inc. v. Macy's Drug Store, Inc., 3 Cir., 84 F.2d 387, the court enjoined the use of the name "Macy's" by defendant in connection with its pharmacy business. Defendant's claim that the name was arrived at by extracting the last two syllables from the word "pharmacy" was summarily rejected. The court held that the word "Macy's" had acquired a secondary meaning and referred to plaintiff's business; that the use of the word "Macy's" by defendant had a tendency to mislead and deceive the public into believing that defendant's business was connected with plaintiff's; that defendant's purpose in using the word "Macy's" was to appropriate the good will or trade of plaintiff and was a "palpable attempt to make use of plaintiff's reputation and goodwill, acquired through many years of advertising".

In Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, D.C.E.D.Penn., 20 F.Supp. 703, the plaintiff objected to the defendant's use of the letters "A & P" in its business. Defendant was engaged in selling radios, washing machines and electric refrigerators. None of these articles were sold by the plaintiff. In granting injunctive relief the court stressed that actual diversion of customers need not be shown under such circumstances. The fact that the products marketed by defendant were not similar to those marketed by plaintiff was not considered controlling. It was pointed out that the normal potential expansion of plaintiff's business would be forestalled if identity of product were essential to relief and that plaintiff's reputation, credit, or financial standing might be injured if the public believed there was a connection between it and the defendant.

■ It is indeed well settled that an identity of products is not essential where the public may be deceived into believing that the defendant's product is associated with the plaintiff's business. Tiffany & Co. v. Tiffany Productions, Inc., 147 Misc. 679, 264 N.Y.S. 459, affirmed, 1st Dept., 237 App.Div. 801, 260 N.Y.S. 821, affirmed 262 N.Y. 482, 188 N.E. 30; John Forsythe Co., Inc., v. Forsythe Shoe Corp., 1st Dept., 234 App. Div. 355, 254 N.Y.S. 584, modified 259 N.Y. 248, 181 N.E. 467; L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272; Ford Motor Co. v. Ford Insecticide Corp., D.C.E.D.Mich., 69 F.Supp. 935.

■ In the case at bar, defendant's selection of the name "Warner" as part of its corporate name and on its record labels, is misleading and would cause confusion and deception. This is a vital consideration both under the Lanham Act, 15 U.S.C.A. § 1114(1), and in determining whether the defendant's conduct constitutes unfair competition. See Maternally Yours Inc., v. Your Maternity Shop, Inc., supra.

■ Moreover, while the plaintiff companies were not in the record distribution business at the time the defendant adopted the "Warner" name, they were actively engaged in the licensing of records, and subject to the terms of such licenses, the Warner name appeared

on the record labels and covers. It was well known that Warner Bros. Pictures, Inc. had substantial interests in the music publishing field. Under such circumstances I find that plaintiffs have made out a prima facie case showing that the defendant's adoption of the Warner name was for the purpose of trading upon plaintiffs' good-will and reputation. There is no credible showing to the contrary.

Plaintiffs' affidavits also show that defendant's records are of inferior quality. Thus, if defendant is allowed to continue the distribution of records under the Warner name plaintiffs may be seriously injured.

Plaintiffs have made out a clear and convincing case of unfair competition and trade-mark infringement. It is probable that they will ultimately be successful in this action. They have also shown that they will suffer serious and probably irreparable injury if the defendant is not enjoined. This case is therefore one in which the court should exercise its discretion by granting preliminary injunctive relief.

An order will be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C.A., restraining the defendant Warner Music, Inc., pending the hearing and determination of this action, and its agents, servants, employees and attorneys, and all persons in active concert or participation with them, from manufacturing, selling, advertising, marketing, distributing, licensing, and merchandising phonograph records and any other products under or with the name, mark or symbol of "Warner", or any simulation or variation thereof, and from using the name "Warner" as part of the defendant's corporate name.

The order will be conditioned upon plaintiffs furnishing security in a sum to be fixed therein for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained, as required by Rule 65(c), F.R.Civ.P. At the time of settlement of the order the parties may submit such

data by way of affidavit as will enable the court to determine the amount of security to be fixed.

This opinion constitutes my findings of fact and conclusions of law on this motion under Rule 52, F.R.Civ.P.

Settle order complying fully with Rule 65, F.R.Civ.P. on notice.