**HILLS BROS. COFFEE, INC., Plaintiff,**

v.

**HILLS SUPERMARKET, INC.,
Defendant.**

**No. 69 Civ. 4932.**

United States District Court,
S. D. New York.

March 18, 1970.

Kane, Dalsimer, Kane, Sullivan &
Kurucz, New York City, Townsend &

Townsend, San Francisco, Cal., for plaintiff.

Weil, Gotshal & Manges, New York City, for defendant.

## OPINION

TYLER, District Judge.

This is an action for alleged trademark infringement and unfair competition.[1] Plaintiff Hills Bros. Coffee, Inc. ("HBC"), is now seeking injunctive relief, *pendente lite.* Defendant Hills Supermarkets, Inc. ("HSI") has cross-moved for summary judgment dismissing the complaint and, in addition, has brought its own motion for a preliminary injunction. Both parties have submitted detailed memoranda of law, affidavits and annexed exhibits. Oral argument was heard on February 6, 1970. Both sides claim that all relevant facts are of record, and both declined to offer witnesses at an evidentiary hearing.

Plaintiff in its motion requests the following relief: (1) that defendant be enjoined from using the name *Hills* either alone or in combination with any other word or words on its private brand coffee, tea, cocoa, coffee lighteners, coffee-flavored products and all other coffee-related products; (2) that defendant be prohibited from labeling, advertising and using the name *Hills* alone for all other supermarket products (e. g. other than coffee products) provided, however, that defendant may use *Hills* in conjunction with some other word for such products; (3) that defendant be prohibited from using the slogan "Head for the Hills"; and (4) that defendant be restrained from expanding its supermarket operations into new geographical areas under the name of *Hills, Hills Supermarket, Inc.* or any other name including the word *Hills.*

## I.

### *The Facts*

Plaintiff was formed in San Francisco, in 1878 by two brothers, A. H. Hills and R. W. Hills. In the early days of its operations, plaintiff's products included coffee, tea, spices and dairy produce. Today, plaintiff sells only coffee, and this seems to have been the case for the past forty or fifty years. Around the turn of the century, plaintiff pioneered development and use of vacuum-packed coffee cans. With the aid of the vacuum-packing process, plaintiff began to expand its product market into other geographical areas, particularly the seven most western states and Alaska. In 1908, plaintiff registered its name with the United States Patent Office. Subsequent registrations include the following:

| Trademark | Date | Status |
|---|---|---|
| Hills Bros. | 1/9/23 | Republished under the Lanham Act of 1946, February 24, 1948. Renewed: February 26, 1963. |
| Hills | 8/23/57 | Affidavits of Use and Incontestability accepted by the Patent Office, January 11, 1963. |
| Head for the Hills | 1/1/63 | Affidavits of Use and Incontestability accepted by the Patent Office, April 25, 1968. |
| Hills Bros. | 12/15/64 | |

---

1. In its complaint, plaintiff seeks relief under the Lanham Act, 15 U.S.C. § 1114 (1) and the New York General Business Law, McKinney's Consol.Laws, c. 23–A, § 368–d.

In March, 1922, plaintiff entered the greater New York area for the first time. By 1930, plaintiff had begun expanding into the midwest. In 1939, plaintiff constructed a processing plant at Edgewater, New Jersey to service both its midwestern and eastern markets.

Although it appears that plaintiff did enter this general area around 1922, its records do not reveal the extent, if any, of coffee sales in the greater New York metropolitan area (hereinafter referred to as the "local area") prior to 1960. From 1960 through 1966, however, plaintiff's records reveal annual local area sales ranging from a high of approximately 22,850 pounds in 1960 to a low of approximately 1,758 pounds in 1966. Based upon these limited sales records, I believe a fair inference can be drawn that *Hills Bros.* coffee was for all practical purposes an unknown commodity in this area up through and including 1966. In late 1967, however, the situation began to change dramatically. Plaintiff initiated a vigorous advertising and promotional program, including large scale television, radio, newspaper, outdoor and transit advertising. A permanent local area office was opened in White Plains, New York. Plaintiff's local area coffee sales in 1967 alone exceeded five million pounds. At about this same time, it is relevant to note, plaintiff's coffee made its first appearance on defendant's shelves.

HSI growth and operations, as told by its president, Edwin Epstein, began with the formation of the Montauk Wholesale Grocery Co., Inc. ("Montauk") in 1921. In 1933, Montauk and its principal retail customer, King Kullen Stores, united to form Mid-Island Markets, Inc. ("Mid-Island") to operate a supermarket in Suffolk County under the name "King Kullen". In 1938, Mid-Island opened a store in Nassau County, the home base of King Kullen, under the name *Hills.* Defendant asserts that this store was named after Hilliard J. Coan, the son of one of the principals of the old Montauk wholesale operation. By 1947, there were eleven or twelve such retail food markets operating in Suffolk and Nassau Counties, two or three under the *Hills* name, the rest under "King Kullen". Later that year, all of the stores in the Mid-Island chain were renamed "Hills Supermarkets". In 1954, as a result of an internal reorganization and consolidation, Mid-Island and Montauk became "Hills Supermarkets, Inc." In 1960, this concern was listed for trading on the American Stock Exchange for the first time. In January, 1965, "Hills Supermarkets, Inc." merged with E. J. Korvette which subsequently became known as Spartan Industries. From January, 1965, until February, 1967, defendant's supermarkets were operated under the names "Hills Supermarkets", "Korvette's Supermarkets" and "Hills-Korvette's Supermarkets". This chain operated in the local area with stores in Westchester and Rockland Counties, and in New Jersey and Connecticut as well. On March 25, 1968, the present owner, Pueblo Corporation, a firm based in Puerto Rico, acquired the Hills-Korvette division of Spartan Industries.

Currently, HSI operates 68 stores in the local area, accounting for approximately 4% of supermarket sales in that area as a whole, including 8% of such sales in Nassau County, 16% in Suffolk County and 11% in the combined Nassau-Suffolk area.

There is no evidence of a precise date when defendant first began using the *Hills* name in conjunction with its private or "house brand" products. It does appear, however, that sometime prior to 1948, defendant had used the *Hills* name, both alone and in combination with another word or words, on a variety of products, exclusive of coffee and coffee-related products. In 1948, HSI expanded its private labeling activities to include the latter items under the marks Hilltop and Hillcrest.

In 1965, defendant began using the mark *Hills-Korvette* on a variety of products, including coffee. Until the present time, defendant concededly never marketed its coffee under the *Hills* name alone.

On March 25, 1968, pursuant to the above-mentioned sales agreement between Spartan Industries and defendant's parent, Pueblo, Inc., defendant became obligated to phase out the *Korvette* name from its supermarkets and private labels within two years. Shortly thereafter, defendant commissioned a series of public opinion studies, conducted by the firm of Oxtoby-Smith, Inc., to ascertain, among other things, the nature and extent of its reputation under the *Hills* name in the local area. As a result of these studies, defendant decided to retain the *Hills* name alone. A new *Hills* logotype was designed featuring a lower case

In an admitted effort to enhance the value of its new design, defendant commenced an intense institutional as well as conventional advertising campaign featuring the new lower case "h" logotype. Notice of the proposed change was sent out to all of defendant's suppliers, including plaintiff. Thereupon in March, 1969, plaintiff initiated negotiations to induce HSI to drop or modify its plans for use of the *Hills* mark. During the course of these discussions, defendant began affixing the new labels to a variety of its products, except coffee. The labeling change on coffee products was held up pending the outcome of the negotiations. These discussions terminated without agreement immediately prior to the commencement of this action on November 12, 1969.

## II.

### Plaintiff's Motion for a Temporary Injunction

A crucial factor in determining whether or not a party is entitled to the extraordinary relief of an injunction *pendente lite* is whether it is reasonably probable he will prevail after trial. W. E. Bassett Company v. Revlon, Inc., 354 F.2d 868 (2d Cir. 1966). In order to prevail at trial on its claims of trademark infringement and unfair competition, plaintiff will have to establish, among other things, that HSI's use of the mark *Hills* on its private label products is likely to cause confusion in the minds of an appreciable number of ordinary prudent shoppers as to the source or origin of those products. See 15 U.S.C. § 1114(1); Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607 (2d Cir. 1960); Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (2d Cir. 1956).

Thus, initial discussion here will focus upon the likelihood of appreciable confusion in the market presently occupied by both parties, the local area as that term has heretofore been defined.

Determination of likelihood of confusion, of course, cannot be achieved by precise formulae under inflexible rules. See Javar Coffee Co. v. Jos. Martinson & Co., 142 F.Supp. 423 (S.D. N.Y.1956); Warner Bros. Records, Inc. v. Warner Music Co., 167 F.Supp. 661 (S.D.N.Y.1958); Meat Industries Suppliers Inc. v. Kroeger Co., 130 U.S.P.Q. 434 (N.D.Ill.1961); Pikle-Rite Co. v. Chicago Pickle Co., 171 F.Supp. 671 (N.D.Ill.1959). Each case must rest on its own peculiar set of facts and circumstances.

### A. Use of Hills on Coffee in Local Area

It is not without significance that the relief plaintiff seeks *pendente lite* is the same relief it seeks after a plenary trial. Therefore, in order to prevail here, plaintiff must make a strong showing of probable success in establishing at trial its major assertions that in the local area, (1) it was the first to appropriate and use the *Hills* mark, and that (2) *Hills* alone has acquired a secondary meaning in relation to its, plaintiff's, coffee.

In appraising the facts in the papers before me, which facts, by the way, are not in dispute, I conclude both propositions are subject to doubt.

Plaintiff's name and reputation, locally as well as nationally, are based on the *Hills Bros.* mark and not the name *Hills* alone. Plaintiff has devoted the major part of its energies and resources promoting the *Hills Bros.* mark with particular emphasis on the "brothers" or *Bros.* portion. Any witness to plaintiff's advertisements on television, in newspapers

or on outside promotional displays is aware that plaintiff is owned and operated by the Hills family. The image of brother Reuben W. Hills III carefully testing and tasting *Hills Bros*. coffee is a familiar one indeed. By emphasizing its family origins, plaintiff has attempted to convince the local area shopper that *Hills Bros*. coffee is superior to other coffees because it is manufactured and because it is produced under the careful and close supervision of the Hills family, or, more particularly, the Hills brothers. The large increase in the local area sales of *Hills Bros*. coffee since 1967 demonstrates the success of these promotional efforts. Thus, there is a strong inference that the mark which has a secondary meaning in relation to plaintiff's business, in this area at least, is *Hills Bros*. and not *Hills*.

Defendant on the other hand seems to be known and identified in the local area by the *Hills* name. It was defendant and not plaintiff who first appropriated and used this mark to any significant extent. Over the years, defendant has maintained and enjoyed a widespread reputation for dependable supermarkets and high quality private label products, including coffee, under the *Hills* banner. Thus, I infer, the differences in the name, image and reputation of these two marks may

be implanted in the minds of the average local area shopper.

Certainly, plaintiff has made no showing of actual confusion. This is particularly significant here when it is considered that HSI has been a major customer of *Hills Bros*. coffee since 1967 and during this time has marketed its own house brand coffee to customers in the same stores on the same coffee shelves under such allegedly infringing marks as Hillcrest, Hilltop and *Hills-Korvette*. Given the display techniques of today's supermarkets, it is conceivable that there will be less chance of confusion between *Hills Bros*. and *Hills* coffees in the future.[1a] As in the past, defendant intends to display its coffee in the same area and often on the same shelf as plaintiff's coffee every day of the week. Therefore, the shopper is afforded the unusual opportunity of a side-by-side comparison of the two marks. In short, the differences in color and design between plaintiff's *Hills Bros*. mark and

defendant's new  mark take on

added significance, causing me to suspect that today's shopper would not have the slightest difficulty in distinguishing between the source or origin of these two quite different and distinctive marks.[2]

---

**1a.** To show confusion, plaintiff makes much of recent newspaper advertisements of supermarkets competing with HSI in which plaintiff's coffee is identified by the word or mark *Hills*. But, as plaintiff concedes, this is so-called "cooperative advertising", a significant part of the cost of which is borne by plaintiff. Thus, it is reasonable to infer that plaintiff exercises control over such use of the mark *Hills* in these advertisements and that defendant cannot be charged with responsibility for confusion, if such there is, engendered thereby.

**2.** I recognize that my analysis constitutes somewhat of a departure from certain older cases cited by plaintiff in its memoranda of law. See for example Javar Coffee Co. v. Jos. Martinson Co., 142 F.Supp. 423 (S.D.N.Y.1956); Pikle-Rite Co. v. Chicago Pickle Co., 171 F.Supp. 671 (N.D.Ill.1959); Brooks Bros. v. Brooks Clothing of California, 60 F.

Supp. 442 (S.D.Cal.1945); Meat Industry Suppliers, Inc. v. Kroeger Co., 130 U.S.P.Q. 434 (N.D.Ill.1961); Warner Bros. Records, Inc. v. Warner Music, Inc., 167 F.Supp. 661 (S.D.N.Y.1958); Yale Electric Corp. v. Robertson, 26 F.2d 972 (2d Cir. 1928).

I cannot ignore, however, the reality that the public, through the recent advertising, promotional and marketing campaigns carried out by Hills Bros. Coffee, Inc. and Hills Supermarkets, Inc.. has become thoroughly enlightened as to the distinguishing qualities of their respective trademarks and the products they identify, thereby greatly reducing the potential for confusion that might otherwise exist. Moreover, I believe that modern supermarket display and advertising techniques, which are relevant here, were either not in vogue or irrelevant to the factual patterns discussed in these older cases.

## B. Use of Hills on Non-Coffee Products

In view of what has already been said about my substantial doubt that plaintiff has proved or can prove confusion between the two marks in respect to coffee, *a fortiori* likelihood of confusion between plaintiff's coffee and defendant's non-coffee packaging and marks is almost impossible to conceive, let alone prove. But this is not all; two other facts constitute almost insurmountable obstacles in plaintiff's path.

First is the circumstance that in its advertisements and on its coffee can label plaintiff has emphasized, "At Hills Bros., coffee is all we make". Second is the fact that defendant has used the *Hills* mark alone on many non-coffee products for over 20 years. Plaintiff certainly knew or should have known of this for a considerable time; thus, if it had any serious intention of restricting defendant's use of the *Hills* mark in respect to foods other than coffee, it should have taken action years ago. Defendant, then, has available to it a serious and persuasive defense of laches. See Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena, 293 F.Supp. 892 (S.D.N.Y.1968).

## C. Head for the Hills

Plaintiff's claim that defendant be restrained from using the slogan "Head for the Hills" is without factual support. I find no evidence in this record that HSI has used this slogan or that it has any plans to do so. Thus, this requested relief is denied.

## D. Hills Shelf Talkers

In the past, if not at present, defendant has placed tags, known in the trade as "shelf talkers", containing the hand-painted legend HILLS COFFEE on the outer edge of the shelf divider between plaintiff's coffee and HSI's coffee. This technique presents the possibility of confusion out of proportion to any benefit to HSI; thus, HSI is directed, pending trial, to either remove the tags or replace them with a tag containing the new logotype design.

## E. Use of *Hills* by HSI in Other Market Areas

It does not clearly appear from the affidavits that defendant has formulated any definite plans to expand its supermarkets and sale of house brands outside the local area at present or in the immediate future. Without all the facts, this court should refrain from resorting to an injunction against such possible expansion, particularly in the light of the observations heretofore made about the marks of the parties. Hopefully, counsel can prepare this case for a relatively early trial—at a date prior to any proposed expansion by HSI outside the local area. Plaintiff's presently requested relief in this respect is denied.

## F. Unfair Competition

It is doubtful that plaintiff will ultimately prevail on its claim of unfair competition, if for no other reasons than those already discussed in relation to the trademark issues. See Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607 (2d Cir. 1960); Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959). In particular, the undisputed facts establish that HSI has been and still is a valued customer of plaintiff and as such has exhibited substantial good faith in all of its dealings with plaintiff. Plaintiff scarcely can expect a preliminary injunction to issue on any theory of unfair competition under those conceded circumstances.

## II.

### *Defendant's Application for Temporary Injunction*

The historical facts of the development of the parties businesses and trademarks set forth earlier in this memorandum demonstrate that defendant has little likelihood of prevailing on its cross claim of trademark infringement by HBC. If the foregoing analysis of the weaknesses of plaintiff's claims is sound, it follows under the peculiar facts of this case that defendant's case has corresponding infirmities. This motion is denied.

## III.

### Defendant's Motion for Summary Judgment

The issue of alleged confusion alone raises factual questions to defeat this motion. In addition, it may become necessary to explore the facts surrounding defendant's planned market expansion—if such plans specifically exist or come into being.

## IV.

### Conclusion

Essentially because the facts tend to suggest that the parties have distinct marks without significant likelihood of confusion between the two in the eyes of the public, the motion and cross motion for temporary injunction are denied, save for limited relief in the form of prohibition or modification of defendant's "shelf talkers" as mentioned heretofore. Defendant's motion for summary judgment is denied.

Settle order on notice.

